[Crim. No. 9416. Second Dist., Div. Three. Dec. 15, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. DENIS KARLIN, Defendant and Appellant.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Dahlstrum & Walton and Jack A. Dahlstrum for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—The defendant Karlin was convicted of the crime of possession of marijuana. (Health & Saf. Code, § 11530.) Imposition of judgment and sentence was suspended and the defendant was granted probation on condition that he serve a period of 90 days in the county jail. He purports to appeal from the judgment of conviction and from the nonappealable order denying his motion for a new trial. We treat his appeal as one from the order granting probation. (See *People v. Sharer*, 61 Cal.2d 869, 870 [40 Cal.Rptr. 851, 853, 395 P.2d 899].)

At the preliminary hearing the defendant Karlin, who is the appellant herein, was not represented by counsel separate and apart from the attorney who represented his then codefendant, Frank Mabry. Under circumstances hereinafter related, the defendant Karlin testified at that hearing that

he, and not Mabry, had possession of the marijuana involved in the charge. It was ordered that Mabry be discharged. At the defendant Karlin's trial in the superior court, he unsuccessfully objected to the introduction of evidence of such admission of guilt on the ground that the evidence was incompetent because the admission was made at a time when he was not afforded adequate representation by counsel. The question presented on this appeal is whether the reception of that evidence constituted prejudicial error.

In the hearing conducted by the trial judge to determine the competency of the challenged evidence, the defendant Karlin testified that about three or four days after he was arrested he met the attorney who thereafter appeared at the preliminary hearing. The meeting was in the attorneys' room in the Hall of Justice. He had not summoned her. Frank Mabry, who had been arrested at the same time, was also present. Mabry had hired her as his attorney. The defendant Karlin further testified that in the presence of the attorney, Mabry told him that if he, Karlin, would "turn him loose," the "most" that Karlin would receive would be "straight probation." The attorney said that that was "about" what he would get, but she made no promise. Karlin said that he would think about it but that he doubted that he would "turn him loose" at the preliminary hearing; he would have to find his own attorney and he wanted to be released on bail first. Karlin made no financial arrangements with the attorney to whom he talked in the jail.

The defendant Karlin further testified that the next time he saw the attorney was at the preliminary hearing. He had no conversation with her before the case was called and he had not advised her that he would testify. As they walked "into the preliminary" he told Mabry that he would "turn him loose" because Mabry "had some trouble." During the hearing the attorney asked Karlin if that was what he was going to do, and he said "Yes"; this occurred while the arresting officer was testifying. He said that he would take the blame. He thereafter took the stand and was sworn as a witness.

On cross-examination the defendant Karlin said that he did not think that he needed an attorney at the preliminary hearing. He did not tell the judge that the attorney was not representing him or that he wanted an attorney. At that hearing he asked the attorney for advice as to what he should say. But, Karlin testified, she was not handling the case for him.

He took the stand of his own free will because he wanted to testify. On redirect examination the defendant Karlin testified that he had never had occasion to hire an attorney to defend him in a criminal matter prior to his arrest in the present case.

The attorney who had appeared at the preliminary hearing was called as a witness on behalf of the People. Her first contact had been with Mabry at the city jail in response to a call. Thereafter she saw the defendant Karlin in the attorneys' room in the Hall of Justice shortly before the day of the preliminary hearing. She talked to Mabry and Karlin. She was retained as attorney for them. Mabry paid part of her fee and the balance remained unpaid. The attorney's testimony was in part as follows: ''Well, we were in the midst of the preliminary hearing before I had heard anything about him wanting to take the stand. I think this officer had just about finished testifying or had finished. . . . So Karlin leaned over and he says he wanted to take the stand. And he said, 'Would this cut my buddy loose?' I said, 'If the judge believes you are telling the truth he will let him out, but it isn't of necessity you are going to get him out if he figures you are just taking the stand to help him out.' So he said, 'Well, it was my stuff, and he didn't know anything about it.' And I said, 'Is that the truth?' He said, 'Yes.' I said, 'You realize if you take the stand, that anything you say here can be used against you at the time of trial?' He said, 'I know it. I plan to plead guilty to it, because I can get probation. I have never been in anything like this before.' '' At the conclusion of the People's case, the attorney asked the defendant Karlin to take the stand. He did so of his own free will.

On cross-examination the attorney said that she never discussed the matter of her retainer with the defendant Karlin. Mabry told him that he had retained the attorney to represent both of them. She asked Karlin if that was what he wanted and he responded that it was. He wanted her to appear at the preliminary hearing for him. This was at the county jail when she first talked to him. At that time factual matters relating to the case were not discussed; the two men were concerned about the matter of bail. But she had discussed the facts with Mabry in the original interview at the city jail. With respect to her purpose in questioning the defendant Karlin as a witness at the preliminary hearing, the attorney stated: ''I was representing both of them, and my purpose was because he asked to take the stand.''

In response to questions by the court, the attorney testified

that in the interview at the county jail she did not hear the defendant Karlin say anything about obtaining his own attorney. He asked her to represent him at the preliminary hearing. Mabry said that he was taking care of the arrangements, both as to the bail and as to the fees "on both cases." Nothing was said about any testimony to be given at the preliminary hearing. The first mention of the matter of the assumption of responsibility by Karlin so that Mabry could be freed occurred at the preliminary hearing. Mabry did not participate in that discussion. The discussion consisted of a brief whispered conversation at the counsel table while court was in session. She did not inform Karlin of his constitutional rights during any recess.

On further cross-examination the attorney stated that when Karlin told her that he wanted to testify, the matter of a conflict of interests between Karlin and Mabry did not arise in her mind.

As succinctly stated in *People* v. *Garcia*, 202 Cal. App.2d 492, at page 495 [20 Cal.Rptr. 856] : "The basic right to 'appear and defend in person and with counsel' is provided in the Constitution (Cal. Const., art. I, § 13) and in the Penal Code (Pen. Code, § 686). This right guaranteed by our state Constitution is the same right that is guaranteed to defendants in federal courts under the Sixth Amendment to the Constitution of the United States. (*People* v. *Lanigan*, 22 Cal.2d 569, 575 [140 P.2d 24, 148 A.L.R. 176].)"

More than a mere token appearance by an attorney on behalf of a defendant is required to satisfy the constitutional right to counsel. A defendant is entitled to the effective and substantial aid of counsel at all stages of the proceeding. (*People* v. *Avilez*, 86 Cal.App.2d 289, 294 [194 P.2d 829].)

In the present case it appears that the trial court reached the conclusion that the attorney obtained by Mabry did in fact represent both of the accused men at the preliminary hearing. But the court determined that there was not a failure of adequate representation of Karlin of such a nature as to render inadmissible, at the defendant Karlin's trial, evidence of his testimony given at the preliminary hearing by which he incriminated himself and exculpated Mabry. For reasons which will now be stated, we hold that that determination constituted prejudicial error.

It is undisputed that the arrangement with the attorney was initially made by Mabry and that he undertook to pay the attorney's fee, part of which he did pay. The decision of

Karlin to testify at the preliminary hearing was one which was of advantage to Mabry, but it was not necessarily in the best interest of Karlin inasmuch as his testimony was to the effect that the marijuana was his, that he had hidden it in the automobile, and that Mabry had no knowledge of its presence. In serving both Mabry and Karlin, the attorney limited her advice to Karlin—given in a brief whispered conversation at the counsel table in the midst of the hearing—to the statement that if he took the stand, anything that he said could be used against him at the time of trial. Thus the attorney permitted the defendant Karlin, without the aid of adequate advice, to exercise his untrained judgment in making a choice favorable to his codefendant Mabry but of doubtful value from the standpoint of his own interests. (Cf. *United States* v. *Harris,* 155 F. Supp. 17, 20.) That the defendant Karlin was gravely prejudiced by lack of the effective aid of counsel cannot be denied. (Cf. *Holland* v. *Boles,* 225 F.Supp. 863; *United States* v. *Harris, supra,* 155 F. Supp. 17; *Commonwealth* v. *Meehan,* 409 Pa. 616 [187 A.2d 579]; *Commonwealth* ex rel. *Whitling* v. *Russell,* 406 Pa. 45 [176 A.2d 641].) Apropos is the statement in the *Holland* case (225 F. Supp., at pages 865-866) : ''The constitutional infirmity in proceedings conducted under such circumstances is not affected by the fact that the attorney with the dual and irreconcilable loyalties is privately employed rather than court appointed.'' (See also *Porter* v. *United States,* 298 F.2d 461, 463; *Craig* v. *United States,* 217 F.2d 355, 359.)

The defendant Karlin's testimony given at the preliminary hearing was the product of the failure to honor his constitutional right to adequate legal representation. The harm thereby done would be condoned, and to that extent the right to counsel rendered less meaningful, if this court were to hold that such testimony conceding guilt was admissible against the defendant at his trial in the superior court. The admission thereof in the present case constituted prejudicial error and the conviction cannot stand. (See *People* v. *Mora,* 120 Cal. App.2d 896, 899-900 [262 P.2d 594].)[1]

The attempted appeals from the nonexistent judgment of conviction and from the order denying the motion for a new trial are dismissed. The order granting probation is reversed.

Shinn, P. J., and Files, J., concurred.

---

[1]*People* v. *Mora* was disapproved as to a point not here involved in *People* v. *Van Eyk,* 56 Cal.2d 471, 477 [15 Cal.Rptr. 150, 364 P.2d 326].