[Crim. No. 4921. First Dist., Div. One. May 11, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. STUART JOLKE et al., Defendants and Appellants.

Frank D. Winston, under appointment by the District Court of Appeal, and Winston & Katz for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Gloria F. DeHart, Deputy Attorney's General, for Plaintiff and Respondent.

SIMS, J.—This action involves separate appeals by the defendants Jolke and Endal from judgments resulting in prison sentences imposed for respective offenses which were originally charged in the same indictment because they evolved out of the same series of events. Jolke was sentenced following his conviction by plea of guilty of possession of marijuana in violation of section 11530 of the Health and Safety Code with an admitted prior conviction of the same offense in 1963. Endal was sentenced following his conviction by jury verdict of burglary in the second degree in violation of section 459 of the Penal Code, and his admission of prior convictions for burglary and forgery in 1953 and for grand theft and burglary in 1956.

The events giving rise to the charges were the burglary of two apartments on O'Farrell Street in San Francisco over the Fourth of July weekend in 1964. As a result of the investigation Jolke was taken into custody following the discovery in his apartment of articles stolen in the burglary and also some marijuana. The information secured from Jolke led to the apprehension of Endal and one Williams. The indictment originally charged: I All three defendants with conspiracy to commit burglary; II Jolke and Williams with burglary of one apartment; III Jolke and Endal with burglary of another apartment; IV Jolke with possession of marijuana; and V Jolke with receiving stolen goods. At the trial the first count was dismissed. The counts were renumbered, and following Jolke's guilty plea to the possession charge (renumbered as III), the remaining counts were dismissed as to him. Endal and Williams each stood trial on the respective burglary charged to have been committed with Jolke. The former was found guilty and the latter was acquitted. The remaining facts appear in connection with the appeals of the convicted defendats.

### Appeal of Jolke

Defendant Jolke contends that he was deprived of the effective assistance of counsel because his attorney also represented his codefendant Endal and was thereby unable to give Jolke impartial advice. He apparently urges that this vice not only contaminated the sentencing proceedings, which were abruptly foreshortened after he testified in favor of his codefend-

ant with the approval, if not at the direction of their joint attorney, but also his earlier plea. Secondly he asserts error in the sentencing procedure because the trial court set aside its order for proceedings "to ascertain whether he was addicted to narcotics or in imminent danger thereof" pursuant to the provisions of section 6451 of the Penal Code[1] and the proceedings initiated pursuant to that order. Finally he seeks to raise in these proceedings, a point not reflected by the record, namely, that his plea of guilty should be set aside because it was induced by the prosecutor's representation that he would be considered for commitment as provided in section 6451 of the Penal Code, and in fact he was denied such consideration by the aforementioned action of the trial court.

An examination of these contentions reveals no prejudicial error in the conviction and sentencing of defendant Jolke.

At his original arraignment July 29, 1964, Jolke was represented by the public defender. The matter was continued to August 10, 1964, at which time the public defender interposed a motion to dismiss (Pen. Code, § 995) on behalf of all of the defendants. By consent the matter was continued to August 21st at which time the motion was denied. This hearing reflects that in addition to the appearance made by the public defender, there was an appearance by a named attorney who is identified in a subsequent hearing as an associate of the attorney who ultimately represented Endal. On the 21st each of the defendants entered his pleas of not guilty and denied the prior convictions charged against him. A motion to sever was interposed, apparently on behalf of Endal, and continued to August 25th. On that date the motion was granted and the matter was set for trial September 14th as to Endal and Jolke and continued to September 1, 1964, to be set for trial as to Jolke and Williams. On September 1st an appearance was entered for Jolke and Williams by the attorney who subse-

---

[1]Stats. 1961, ch. 850, § 2, as amended by Stats. 1963, ch. 1704, § 2, p. 3348, ch. 1705, § 2, p. 3350, and ch. 1706, § 8, p. 3354 provided in part as follows: "Upon conviction of a defendant for any crime in any superior court, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition of the sentence and conduct proceedings to ascertain if such person is addicted to narcotics or in imminent danger thereof unless in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section. If a petition is ordered filed, proceedings shall be conducted in substantial compliance with Sections 5353, 5053, 5054, and 5055 of the Welfare and Institutions Code." (Repealed Stats. 1965, ch. 1226, § 1, p. 3062 and reenacted as Welf. & Inst. Code, § 3051, *id.*, § 2, p. 3066.)

quently represented Williams at the trial. His motion to sever the charges against these two defendants was denied and the matter was continued for trial on the same date as that theretofore set for Endal's trial. All matters were continued to the 18th, at which time the attorney who represented Williams at the trial was granted leave to withdraw as attorney for Jolke. Whether he was left unrepresented or represented by the public defender does not appear. The matter was then continued to September 23, 1964, for trial.

The minutes of the court reflect that the attorney who had theretofore in person or by associate appeared for Endal, appeared for both Endal and Jolke and joined with the attorney for Williams in moving for consolidation of the trials. The court granted the motion and set aside the severance which had been granted August 25th. At the suggestion of the court the assistant district attorney dismissed the conspiracy charge contained in the first count. The reporter's transcript reflects that although the attorney had discussed the matter with Jolke he had not been officially substituted as his counsel of record. The court was advised there was no conflict between Endal and Jolke, and the latter, who was present, made no request for independent counsel nor did he otherwise object to the proceedings.[2]

A jury was selected and sworn and at 12:30 the court recessed until the afternoon session. At 3 p.m. out of the presence of the jury each of the defendants admitted the prior convictions charged against him, and the counts were renumbered because of the prior dismissal of the first count. It was then announced by the attorney for Endal and Jolke that the latter wished to change his plea, and plead guilty to the count which charged the possession of marijuana. The change of plea was accepted by the prosecutor who stated he consented "since he's admitted the narcotic prior, the punishment for that

---

[2]The record reflects: "Mr. Davis: Your Honor, I have discussed this case with Mr. Jolke, and he is agreeable to my representing him in this particular matter. I don't see any conflict between my client, Mr. Endal, and Mr. Jolke. I don't see any reason why I couldn't represent both of them. The Court: So you represent Endal and Jolke. Mr. Davis: Yes. The Court: And you, Mr. White, represent? Mr. White: Williams. The Court: Stipulated that the charges involved in action 63896 might now be tried together, consolidated? Mr. Davis: The two substantive charges. The conspiracy has been dismissed. The Court: Previously they were severed for trial. Now the order of severance is, in effect, set aside and by stipulation they will be tried together. Mr. Davis: Yes. The Court: All right. And, of course, the conspiracy charge is dismissed. Mr. Davis: Yes, Your Honor. The Clerk: Count number one, as to all defendants now stands dismissed. Mr. Maurer: Yes."

would be far greater than anything that could happen to him under any of the other counts.'' Jolke then changed his plea, admitted his guilt in response to interrogation by the court, and was arraigned for judgment. On motion of his attorney, and without objection by the district attorney, the court ordered the latter to file a petition pursuant to the provisions of section 6451 of the Penal Code the following morning. The court then dismissed the remaining charges against Jolke on the motion of the district attorney.

The following morning a verified petition was filed as prescribed by the provisions of section 6451. The court made an order appointing two doctors to examine the defendant and fixing the hearing for October 8th. The defendant, who appeared with his counsel, was served with copies of the moving papers, and arraigned. Thereupon, the attorney advised the court for the first time that he wanted Jolke available as a witness for Endal.

At the trial of Endal and Williams the examination of the police inspector who arrested Endal brought out that he had first arrested Jolke, after going with him to his room to get identification, when he observed a clock reported as stolen; that he found two other missing items in Jolke's apartment; that Jolke was questioned concerning the burglaries and gave the officers certain information. Inquiry as to the nature of that information was conducted out of the presence of the jury. The record reflects that the parties had before them a transcript of the testimony before the grand jury and that it was assumed therefrom that the officer would testify that Jolke told him that he found a key in the hallway and gave it to an ex-convict whom he knew as Joe, and whom he further identified by description and residence address. Subsequently, before the jury on cross-examination, the inspector testified that Jolke had told him he gave the key to Endal so the latter could go upstairs to commit the burglary, and that he received some Methedrine crystals in return.

The inspector further testified out of the presence of the jury that Jolke stated: that he gave another key to Williams, whom he described; that Williams had burglarized the room and returned with an armful of clothes; and that Williams had returned the key which Jolke then threw away.

When called to testify for the defendants Jolke asserted that it was he who entered the apartment in which Endal's presence had been suggested by evidence of his fingerprints on a jewel box therein; that the entry was effected with a key he

found; that he invited Endal to the apartment and represented it was his and never told him that it belonged to somebody else; that he removed and gave to Endal the hair drier that was subsequently found in Endal's apartment; and that he never disclosed from whom it had been obtained. Jolke further testified that he had sold to Williams the garments, stolen from the other apartment, in which Williams was clothed at the time of his arrest. On cross-examination Jolke stated he lied when he told the officers he gave the key to one apartment to a man named Joe at the address where Endal was found with the hair drier. He denied other statements concerning Endal's participation which were allegedly attributed to him by the officers. He also stated that he told the officers an untruth when he told them that he gave one key to Williams, and that Williams later returned with a lot of clothing; and that he lied when he told the inspector that Williams brought him an electric shaver which was found in his apartment and a transistor radio.

On direct examination Jolke refused to answer a question asking him his purpose on entering the apartment which Endal was charged with burglarizing and stated: "I can't answer that question on the grounds that it may tend to incriminate me, sir." On cross-examination he gave similar responses to questions asking him what he did after he invited Endal upstairs into that apartment, to a question asking him if he removed the hair drier from that apartment, to a question asking him where he obtained the coat he testified he sold to Williams, and to inquiry directed to the manner in which he obtained the two clocks and the electric razor which were found in his own apartment.

After all parties had rested and the jury was recessed the court ordered Jolke returned to the court. The judge stated: "There will be further proceedings in this Jolke matter. This morning the Court entertained proceedings under section 6451 of the Penal Code. In the opinion of this Court, Mr. Jolke's record indicates such a pattern of criminality that he does not constitute a fit subject for commitment under section 6451 of the Penal Code. The proceedings of this morning will be set aside." Thereupon it was ascertained that he was not eligible for probation (see Health & Saf. Code, § 11715.6; *People* v. *Wallace* (1963) 59 Cal.2d 548, 549-550 [30 Cal.Rptr. 449, 381 P.2d 185]), the defendant and his counsel waived presentence report, and he was sentenced forthwith.

### Claim of lack of effective aid of counsel

 It is unquestione'd that the right to counsel connotes effective aid in the preparation and trial of the case. (*In re Rose* (1965) 62 Cal.2d 384, 386 [42 Cal.Rptr. 236, 398 P.2d 428]; *People* v. *Douglas* (1964) 61 Cal.2d 430, 434 [38 Cal. Rptr. 884, 392 P.2d 964]; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Karlin* (1964) 231 Cal.App.2d 227, 231 [41 Cal.Rptr. 786].) Where at most there is faulty judgment on the part of an attorney selected by the defendant there is no deprivation of the effective aid of counsel in the constitutional sense. (*In re Rose, supra,* 62 Cal.2d 384, 390-391; and see *People* v. *Robillard* (1960) 55 Cal.2d 88, 96-98 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; and *People* v. *Widener* (1963) 220 Cal.App. 2d 826, 829 [34 Cal.Rptr. 130].) On the other hand, where counsel's lack of diligence or competence reduces the trial to a farce or sham the defendant has been deprived of the representation contemplated by the Constitution. (*People* v. *Ibarra, supra,* 60 Cal.2d 460, 464-466.) A corollary of the right to effective assistance is the right to have separate counsel upon request, or upon objection to having the same counsel, where it is reasonably probable the interests of each of two or more defendants will require the pursuit of a 'different course. (*People* v. *Douglas, supra,* 61 Cal.2d 430, 436-439; and see *People* v. *Robinson* (1954) 42 Cal.2d 741, 745-748 [269 P.2d 6]; *People* v. *Lanigan* (1943) 22 Cal.2d 569, 574-577 [140 P.2d 24, 148 A.L.R. 176]; and *People* v. *Kerfoot* (1960) 184 Cal.App.2d 622, 637-645 [7 Cal.Rptr. 674].)

 Nevertheless, the mere fact that one attorney represents multiple defendants does not deprive one of the defendants of his right to counsel, and the burden is on the defendant to advise the trial court of any alleged conflict of interest. (*People* v. *Byrd* (1964) 228 Cal.App.2d 646, 648-650 [39 Cal. Rptr. 644]; *People* v. *Welch* (1963) 212 Cal.App.2d 397, 400-402 [28 Cal.Rptr. 112]; *People* v. *Rogers* (1962) 207 Cal.App. 2d 261, 269-271 [24 Cal.Rptr. 341]; *People* v. *Sprinkle* (1962) 201 Cal.App.2d 277, 281-282 [19 Cal.Rptr. 804]; *People* v. *Hall* (1960) 178 Cal.App.2d 878, 880-881 [3 Cal.Rptr. 442]; *People* v. *Kitchens* (1958) 164 Cal.App.2d 529, 542-543 [331 P.2d 127].) Where as here, the defendant has been represented by counsel of his own choice, the following is pertinent: "He was represented by private counsel of his own choice; he at no time raise'd any objection to him, to the manner in which he was being represented, or to the fact that

counsel also represented Gillis and Margaret, nor did he ever suggest there was a conflict of interest between him and his codefendants or indicate that he desired a change of counsel. The issue he now raises was never brought to the attention of the trial court, and under the circumstances it was under no duty to ascertain whether a conflict of interest might arise.'' (*People* v. *Welch, supra,* 212 Cal.App.2d at p. 401; and see also *People* v. *Hall, supra*; and *People* v. *Kitchens, supra*; and *In re Rose, supra,* 62 Cal.2d 384, 389.)

█ In applying these principles to the instant case it appears that the court was advised that there was no conflict between Jolke and Endal. Jolke acquiesced in his counsel's statement, and subsequently, apparently with that counsel's advice, entered his plea of guilty. There is nothing in the record to impeach the probity of this advice, which resulted in the dismissal of all the other charges under circumstances, the jury having been sworn, which probably would preclude the reinstatement of such charges (see *Jackson* v. *Superior Court* (1937) 10 Cal.2d 350, 358-359 [74 P.2d 243, 113 A.L.R. 1422]). There was nothing in the entry of the plea to suggest a conflict of interest.

It was only when Jolke took the stand to testify for his codefendants that the possible conflict of interest arose. The situation is the antithesis of that found in *People* v. *Turney* (1954) 127 Cal.App.2d 258 [273 P.2d 681] wherein the appellant complained that his codefendant ''apparently valued the right against self-incrimination higher than his moral duty to testify as to facts which would, if believed, have exonerated the appellant'' (127 Cal.App.2d at p. 261), and urged that this demonstrated error in the failure to appoint separate counsel on request. The court found there was no record of any such request and that in any event there was no prejudice. Here there never was a request for separate counsel.[3] The prejudice was not so much that the admissions which Jolke made tended to show his guilt of the charges which he had denied and which had been dismissed, but in the fact that the discrepancies between his statements to the officers and his testimony at the trial led the court to believe he was committing perjury to exonerate his codefendants. If it be assumed that the privilege continued pending his sentence, despite his apparent freedom from prosecution for the burglary charges (cf. *Ex parte Cohen* (1894) 104 Cal. 524, 527-528

---

[3]In fact the records of this court reflect that Jolke sought the appointment of his trial counsel to represent him on this appeal.

[38 P. 364, 43 Am.St.Rep. 127, 26 L.R.A. 423]), he could have refused to testify and would have been well advised so to do. On the other hand, the record reflects that he was aware of and asserted the privilege against self-incrimination. Under such circumstances it cannot be presumed that counsel deliberately failed to advise him of his rights and the possible consequences of his testifying so that he could be exploited to assist his codefendants. On the barren record it is more logical to assume, in support of the presumption of innocence to which his counsel is entitled, that the convicted defendant was advised of his rights and the consequences of taking the stand, and that he elected to face these perils in the hope that he could, as he successfully did as to one, assist in exonerating his codefendants.

In *People* v. *Karlin, supra,* 231 Cal.App.2d 227, the appellate court held that the trial court committed prejudicial error in overruling appellant's objections to the admission in evidence at his trial of his former testimony at the preliminary hearing, which was given when he was called as a witness by a codefendant. An extensive hearing had been held in the trial court to determine the circumstances under which the testimony had been elicited. The reviewing court summarized the evidence and concluded as follows: "It is undisputed that the arrangement with the attorney was initially made by Mabry and that he undertook to pay the attorney's fee, part of which he did pay. The decision of Karlin to testify at the preliminary hearing was one which was of advantage to Mabry, but it was not necessarily in the best interest of Karlin inasmuch as his testimony was to the effect that the marijuana was his, that he had hidden it in the automobile, and that Mabry had no knowledge of its presence. In serving both Mabry and Karlin, the attorney limited her advice to Karlin—given in a brief whispered conversation at the counsel table in the midst of the hearing—to the statement that if he took the stand, anything that he said could be used against him at the time of trial. Thus the attorney permitted the defendant Karlin, without the aid of adequate advice, to exercise his untrained judgment in making a choice favorable to his codefendant Mabry but of doubtful value from the standpoint of his own interests." (231 Cal.App.2d at pp. 231-232.) Herein it appears that Jolke made a choice favorable to his codefendants but of doubtful value from the standpoint of his own interests. The record, however, fails to reveal any of the circumstances which were

present in *Karlin,* and affirmatively shows that his testimony only collaterally, and not directly, affected Jolke's prosecution and punishment.

## Claim of error in addiction proceedings

█ Where the trial court has erroneously refused to exercise the discretion conferred by section 6451 because of a misapprehension as to the defendant's eligibility for the program, the case will be remanded to permit the exercise of such discretion. (*People* v. *Ortiz* (1964) 61 Cal.2d 249, 252-256 [37 Cal.Rptr. 891, 391 P.2d 163]; *People* v. *Ibarra, supra,* 60 Cal.2d 460, 466-468; *People* v. *Wallace* (1963) 59 Cal.2d 548, 551-553 [30 Cal.Rptr. 449, 381 P.2d 185].) In *Ortiz* the court said: "It is true that section 6451 does not set forth any formalities which the trial court must follow in making its preliminary determination as to whether the defendant is addicted to narcotics or in imminent danger thereof and hence requires the institution of commitment proceedings, nor any specific criteria which the court must consider in so ruling. But the discretion thereby vested in the court should be exercised with a view to implementing, rather than possibly frustrating, the strong legislative policy disclosed by the enactments creating and governing the narcotic addict rehabilitation program. That policy, responsive to the current medicosocial approach to the issue of drug addiction (see *In re De La O* (1963) 59 Cal.2d 128, 140-141 [6], 143 [8], 144-145 [10], 148 [12]-149 [13] [28 Cal.Rptr. 489, 378 P.2d 793]), favors inquiry into the addictive status of *all* criminal defendants whose record indicates the presence of an addiction problem." (61 Cal.2d at pp. 254-255.)

█ On the other hand, where the trial court has exercised its discretion and determined that the defendant does not constitute a fit subject for commitment under the section, its finding will not be upset if it is supported by the record. (*In re Nunez* (1965) 62 Cal.2d 234, 236 [42 Cal.Rptr. 6, 397 P.2d 998]; *People* v. *Corona* (1965) 238 Cal.App.2d 914, 921-923 [48 Cal.Rptr. 193]; *People* v. *Zapata* (1963) 220 Cal. App.2d 903, 911-913 [34 Cal.Rptr. 171].) In this last connection the statute provided for a hearing under the proscribed circumstances "unless in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section." █ The judge in revok-

ing the order for a hearing made an express finding to that effect based on Jolke's record. The record then before the court consisted of his two convictions of possession of marijuana, and the judge's observation of defendant as a witness in the pending case. It was obvious that the latter left him a self-exposed burglar of two apartments, or a perjurer. It is obvious from the court's remark, "This Court is not going to be a forum for perjury"—that the court after hearing the testimony of the officers, after apparently examining the testimony in the grand jury transcript, and after observing the defendant on the stand, concluded that he had been lying under oath. No probation report was prepared and filed so the court could not predicate its opinion on any information thereby derived. The defendant and his counsel waived the right to have such a report prepared, and he cannot be heard to object now. It would be factitious to insist on substituting secondhand information in the probation report for the judge's personal observation.

This defendant claims that the court had no power to set aside its order of reference. A phrase culled from a footnote in *People* v. *Victor* (1965) 62 Cal.2d 280 [42 Cal.Rptr. 199, 398 P.2d 391], concerning termination of proceedings, is offered in support of this proposition. (See 62 Cal.2d at p. 293, fn. 7.) The general rule is that prior to judgment the court has jurisdiction to modify, revoke or set its orders aside. (*People* v. *Eggers* (1947) 30 Cal.2d 676, 692 [185 P.2d 1] ; *De La Beckwith* v. *Superior Court* (1905) 146 Cal. 496, 501 [80 P. 717].) It would be an idle act to proceed with examination, reports and hearing when the court had determined, from facts brought to its attention since making the original order, that defendant was not a fit subject for the program.

### Inducement for the plea

Jolke asserts that his plea of guilty was in reliance on an unkept official promise, and that his conviction should not stand. (See *People* v. *Wadkins* (1965) 63 Cal.2d 110, 113 [45 Cal.Rptr. 173, 403 P.2d 429].) There is nothing in the record to reflect that anyone in authority ever represented to the defendant that if he plead guilty he would be granted a hearing under section 6451 of the Penal Code. Insofar as he alleges the district attorney agreed not to oppose a motion for consideration under section 6451, the promise was kept. The court's revocation of its order was predicated on matters arising after the plea was entered and the motion was

made. "In the absence of an allegation of state involvement, petitioner's allegation that counsel improperly induced him to enter a guilty plea does not state a ground for *coram nobis* relief. . . . Moreover, the record shows that petitioner wished to be referred to the narcotics rehabilitation program. Since criminal proceedings were then in progress and section 6451 of the Penal Code requires a conviction before a judge may consider such a referral, a guilty plea was the most expeditious way to invoke the court's discretion. Hence it does not appear that counsel erred in recommending a plea of guilty." (*In re Nunez, supra,* 62 Cal.2d 234, 236.) There are no circumstances disclosed in the record which would justify setting aside defendant's plea. (*People* v. *McDowell* (1962) 204 Cal.App.2d 734, 736 [22 Cal.Rptr. 646] ; *People* v. *Mitchell* (1960) 185 Cal.App.2d 507, 508 [8 Cal.Rptr. 319] ; *People* v. *Kelly* (1960) 184 Cal.App.2d 611, 612-615 [7 Cal.Rptr. 600] ; *People* v. *Rose* (1959) 171 Cal.App.2d 171, 172 [339 P.2d 954] ; *People* v. *Loeber* (1958) 158 Cal.App.2d 730, 733-734 [323 P.2d 136].)

### *Prejudice*

If it be assumed that the court erred in not exercising clairvoyance and stopping the proceedings to secure independent counsel for Jolke when he was called as a witness, or in failing to permit the proceedings under section 6451 to continue to a hearing, in what respect has defendant been prejudiced? If he had been advised to remain silent until sentenced and did so, it might be assumed that the section 6451 proceedings would have continued. There is not in the record, however, a scintilla of evidence to suggest addiction or danger of becoming addicted to narcotics, which, for the purpose of those proceedings, excludes marijuana. (Pen. Code, § 6407; Stats. 1961, ch. 850, § 2, p. 2224; and see Welf. & Inst. Code, § 3007 as added Stats. 1965, ch. 1226, § 2, p. 3065.) The only matters in the record bearing at all on the question are the two convictions of possession of marijuana, and a suggestion that he secured Methedrine, a dangerous drug but not a narcotic, from Endal in return for the key to one of the apartments. Nothing was brought before the lower court by motion for new trial, or motion to vacate, or otherwise, to indicate that a remand for the purpose of reconsidering defendant's eligibility for the rehabilitation program would produce a different result.

The judgment against Jolke must be affirmed.

*Appeal of Endal*

Defendant Endal concedes that the apartment he is charged with burglarizing with Jolke was burglarized over the Fourth of July weekend and that the hair drier found in his hotel room was the property of the occupant and was removed from that apartment. He also admits that he entered the victim's apartment on the invitation of Jolke and remained there a short time; and that there is testimony that his fingerprints were found on articles in that apartment. He alleges that Jolke gave him the hair drier without telling him that it was a stolen article.

He complains that his arrest was illegal, unlawful and without justification and that any search or seizure attendant thereto is within constitutional prohibitions on illegal searches and seizures attendant to an illegal arrest.

As has been noted in connection with the appeal of Jolke, both Jolke and the inspector testified that the former directed the officers to Endal's apartment. The crucial facts relate to what transpired there. The inspector testified: "We went there to the door of room 17, knocked on the door, and Mr. Endal answered the door, about half-dressed. He had no shirt on, just a pair of trousers. . . . At that time we entered the room; we placed him under arrest." In elaboration, upon examination by the court, out of the presence of the jury, the officer stated that after Endal answered the door he turned around and walked into the room; that after the officers identified themselves they followed him into the room and placed him under arrest; that after Endal was placed under arrest the officers found a hair drier, which answered the description of that stolen, in plain view lying right on top of a steamer trunk. On cross-examination it was brought out that some man acting in the capacity of manager had been requested to accompany the officers and bring a key with him in the event the officers needed it; that it was in fact this man who knocked on the door, although he said nothing when Endal answered the door, and the officers identified themselves as police officers. Endal replied, "I know you" or "I know it" in response to the officers' statements, turned around and walked back into the room without verbally inviting the officers in. Endal did not testify on *voir dire* but subsequently, on taking the stand, stated: that he did not invite the inspectors into his room; that he answered to the knock of the assistant manager who told him there was someone to see him; that when he opened the door the two inspectors entered, told him he was under

arrest for burglary and saw the hair drier sitting out in the open.

The trial court found that Endal opened the door, turned and walked back into the room, and it drew the inference therefrom that there was an implied invitation to the officers to enter.

Defendant Endal stresses that the information received from an informer of unknown reliability did not give the officers reasonable cause to arrest him, and that without such cause the officers had no right to enter, arrest him, and seize the hair drier.

 Since the search was made without a warrant the burden was on the prosecution to show proper justification. (*People* v. *Reeves* (1964) 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Shelton* (1964) 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665].) The search cannot be justified as incident to the arrest of Jolke which occurred some blocks from Endal's hotel (60 Cal.2d at p. 744); nor can it be predicated, without a warrant, on a reasonable belief that the stolen property was concealed within Endal's hotel room (*id.*, pp. 744-745). The information received from Jolke was insufficient to justify the arrest and attendant search of Endal unless corroborated, in essential respects, by other facts, sources or circumstances. (*People* v. *Gallegos* (1964) 62 Cal.2d 176, 179-180 [41 Cal.Rptr. 590, 397 P.2d 174]; *People* v. *Reeves, supra,* 61 Cal.2d 268, 273-274; *People* v. *Amos* (1960) 181 Cal.App.2d 506, 508-509 [5 Cal.Rptr. 451]; *People* v. *Goodo* (1956) 147 Cal.App.2d 7, 9-10 [304 P.2d 776].)

The People accept for the purpose of argument, as well they might, the premise that there was no right to arrest Endal because of the information received from Jolke until it was corroborated by the discovery of the stolen property in Endal's room. They contend that this discovery was properly made because the inspectors, despite their improper motive to arrest Endal, were in his room by his implied invitation, and observed the incriminating evidence without violating any of that defendant's constitutional rights.

 It is established that ''it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes.'' (*People* v. *Michael* (1955) 45 Cal.2d 751, 754 [290 P.2d 852]; and see *People* v. *Martin* (1955) 45 Cal.2d 755, 761 [290 P.2d 855].) In fact it would have been unreasonable if the officers had not investigated Jolke's accusations. Once lawfully in the

premises the officers cannot be criticized for viewing what is in plain sight and seizing it if it is contraband, stolen property, or other evidence of crime. (*People* v. *Roberts* (1956) 47 Cal.2d 374, 380 [303 P.2d 721]; *People* v. *Martin, supra,* 45 Cal.2d 755, 761-762; and see *People* v. *Cove* (1964) 228 Cal. App.2d 466, 471 [39 Cal.Rptr. 535]; *People* v. *Davis* (1961) 188 Cal.App.2d 718, 723 [10 Cal.Rptr. 610]; *People* v. *Murphy* (1959) 173 Cal.App.2d 367, 377 [343 P.2d 273].) The crucial question is whether or not the evidence supports the finding of the trial court that there was an implied invitation to enter. In *Michael* the opinion observed that the varying factual situations make it 'difficult if not impossible to reconcile the cases (45 Cal.2d at p. 753). The precedents, however, do plot a path within which the lower court must exercise its discretion where the evidence is conflicting. In *Gallegos, supra,* the entrance and attendant search and seizure were invalid because there was a lack of probable cause for the immediately preceding arrest of the returning occupant at his threshold (62 Cal.2d 176, 178). Here the officers were within the premises before the defective arrest was attempted. In *Reeves, supra,* the court found that the observation of contraband through an open door was tainted because the accused had been induced to open the door by ruse or subterfuge (61 Cal.2d 268, 273). Defendant would equate the presence of the assistant manager and his knocking on the door, with the use of a similar factotum in *Reeves* to call the accused down to the desk on a spurious errand. There is nothing to show that defendant knew of the manager's presence before he opened the door, and a conflict in the evidence as to whether anything was said to or by this third person. No ruse or subterfuge appears (see *People* v. *Brooks* (1965) 234 Cal.App.2d 662, 673-674 and 678-679 [44 Cal.Rptr. 661]). In *Shelton* the court put definite limits on *Michael* and *Martin.* The opinion recites: "The search cannot be justified on the ground that Victorian voluntarily opened the door and thereby exposed evidence sufficient to justify her arrest and a search incident thereto. 'To protect his right to object to an unreasonable search or seizure a defendant need not forcibly resist an officer's assertion of authority to enter his home or search it or his person [citations], but if he freely consents to an entry or search, or voluntarily produces evidence against himself, his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable. [Citations.] Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or

implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.' (*People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852].) There is no room for doubt in the present case, for the officer candidly testified that he demanded that Victorian 'Open the door right now.' When he made that demand he had no reasonable cause to arrest Victorian and no right to order the door opened. Since it was opened by virtue of the wrongful assertion of authority [citations], the officers could not rely on what they then saw to justify Victorian's arrest and the search incident thereto. [Citations.]

"The right to seek interviews with suspects at their homes (*People* v. *Martin*, 45 Cal.2d 755, 761 [290 P.2d 855]; *People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852]) does not include the right to demand that a suspect open his door. A suspect has no duty to cooperate with officers in securing evidence against him, and in the absence of probable cause to make an arrest, he is entitled to have a magistrate determine whether there is justification for invading the privacy of his home. [Citations.] Thus, in approving the officers' conduct in seeking interviews in the *Michael* case and the *Martin* case, we were careful to point out that we were not dealing with inquiries 'accompanied with any assertion of a right to enter or search or secure answers' (*People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852]) or made with a demand 'that the door be opened or that [the officers] be admitted.' (*People* v. *Martin*, 45 Cal.2d 755, 761 [290 P.2d 855].)'' (60 Cal.2d at pp. 746-747.) ▮ Herein there was no delay or hesitancy in opening the door, no inquiry regarding the nature of the callers, nor any indication, either express or implied, that defendant would not see or talk to the officers. Under such circumstances it cannot be subsequently asserted that the consent and ensuing entrance were the result of an unwarranted assertion of authority. (*People* v. *Michael*, *supra*, 45 Cal.2d 751, 755.) Nor does it appear that the officers, as in *People* v. *Haven*, walked in uninvited before the defendant had an opportunity to object (59 Cal.2d 713 at p. 717 [31 Cal.Rptr. 47, 381 P.2d 927]).

▮ The circumstances here justify the trial court's finding that there was an implied invitation to the officers to enter which was imparted by defendant's conduct in leaving the door open and walking back into the room as though to receive and converse with his accusers. (*People* v. *Cove*, *supra*, 228 Cal.App.2d 466, 470; *People* v. *Baca* (1961) 198 Cal.App.2d

391, 396 [17 Cal.Rptr. 779]; *People* v. *Smyre* (1958) **164** Cal.App.2d 218, 224 [330 P.2d 489].)

 Since the officers were legally within the premises, their observation and seizure of the stolen hair drier was not tainted by the fact that they improperly purported to arrest the accused before the stolen goods were observed. (*People* v. *Ball* (1958) 162 Cal.App.2d 465, 467 [328 P.2d 276].) Once the hair drier was observed, there was sufficient corroboration of Jolke's accusation, and it was proper to retain Endal in custody. (*Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 295-296 [294 P.2d 36].)

There being no error in the admission of the evidence in question against Endal the judgment as to him must be affirmed.

The separate judgments against defendant Jolke and against defendant Endal are each affirmed.

Sullivan, P. J., and Molinari, J., concurred.