The trial court found defendant guilty of possession of marijuana (§ 11530, Health Saf. Code) and subsequently denied his motion for a new trial. Defendant appeals from the order denying the motion (2d Crim. 14563). His application for probation was denied and defendant was sentenced to the state prison for the term prescribed by law; he appeals from the judgment of conviction (2d Crim. 13621). Thereafter the two appeals were consolidated. The appeal from the order (2d Crim. 14563) is dismissed. (§ 1237, Pen. Code; People v. Ing,65 Cal.2d 603, 614 [55 Cal.Rptr. 902, 422 P.2d 590].)
Using the name Ernest Ryan, defendant and another man, Henry Ryan, representing themselves as brothers rented a bachelor-type apartment (No. 227) from the manager Henry Smith, on June 25, 1966. On July 7, 1966, Smith heard a cat crying in defendant's apartment; no one was home so he opened the door with a pass key, found a white kitten and fed it. As he started out of the apartment he saw on a shelf in an open closet a shoe box containing material he believed to be marijuana; he had seen marijuana on numerous occasions during his 20 years in the Air Force. Since defendant moved in, Smith had noticed numerous persons, all men — as many as five in one day — go and come from the apartment. Smith took a pinch of the material and put it in a Kleenex; he also took a package of cigarette papers in the front of the box. He notified police and within a day or two Sergeant Mullen, Narcotics, called him; he told the officer of his observations and Sergeant Mullen told him to keep the sample until he could come out and identify it.
On July 10, 1966, defendant and the other man moved into a one bedroom apartment (No. 221). Henry Ryan told Smith he had ordered a telephone but was going to New York and if his brother was not in he should let the telephone man in the apartment. On July 13, 1966, the man came to install the phone. Smith went to the door of apartment 221 and knocked; receiving no answer, he walked in, saw no one, looked in the bedroom and saw defendant asleep. He called to him but defendant did not awaken. On a dresser in the bedroom Smith saw a cellophane wrapped package of material that appeared to him to be the same he had seen in defendant's other apartment (No. 227); he believed it to be marijuana. Smith left the *Page 341 
apartment and called Sergeant Mullen advising him of the situation; forty-five minutes later Sergeant Mullen and his partner arrived. Smith told him what he had seen in defendant's apartment (No. 227) on July 7, 1966, and showed him the sample of material he had taken from the box. Sergeant Mullen examined the debris and identified it as marijuana. After further discussion concerning the events of the day they went to apartment 221; Smith knocked on the door and in a loud voice said that the telephone man was there. Receiving no answer, Smith unlocked the door and they went in. This time, defendant was asleep on the couch in the front room; Smith tried to awaken him but defendant did not awaken. On a coffee table about 18 inches from the divan on which defendant was sleeping were a partially burned marijuana cigarette and some capsules. Smith pointed out the plastic package (containing marijuana) on the dresser in the bedroom. Sergeant Mullen searched the apartment and found a grocery bag containing marijuana in the second drawer of the dresser and a jar containing six marijuana roaches on a shelf of the linen closet. Believing another person to be involved, Sergeant Mullen remained in the apartment awaiting his arrival for approximately three hours. At 7 p.m. defendant awakened, was placed under arrest and advised of his constitutional rights; the officer searched him and found on his person an "alligator clip," a device used by marijuana smokers to hold cigarettes so that all of the marijuana can be smoked.
[1a] In an argument for which he cites no authority and in which he fails to demonstrate in what manner there is a lack of evidence to support the trial court's finding of probable cause, appellant contends that the officers had no reasonable cause to arrest him. Entirely irrelevant to all issues raised in his brief is appellant's main complaint that he was arrested but his roommate was not.
In the light of the information given to Sergeant Mullen by Mr. Smith in the two telephone calls to him, it was reasonable for the officers to go to the apartment house to investigate the manager's complaint and interview the occupant of apartment 221. (People v. Michael, 45 Cal.2d 751, 754 [290 P.2d 852];People v. Jolke, 242 Cal.App.2d 132, 147 [51 Cal.Rptr. 171] .) On arrival Sergeant Mullen received further information from Smith, then identified the sample Smith took from defendant's apartment as marijuana.
[2] Because no exact formula for determining probable cause exists and each case must be determined on its own *Page 342 
facts, the question of probable cause must be tested by the facts which the record shows were known to the officers at the time they were required to act. (People v. Ross, 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606]; People v. Privett,55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602].) [1b] The evidence supports the conclusion that prior to entering defendant's apartment Sergeant Mullen knew that defendant and another man had moved into the apartment representing themselves to be brothers, did not want to sign their names for utilities and were willing to pay more for them to have Smith take care of them; that although they told Smith they had just come from New York, Smith observed an unusually large number of people go to and from defendant's apartment and stay only a short time; that a few days before, Smith took from defendant's first apartment a pinch of material which he believed to be marijuana from a larger quantity in a shoe box; that the pinch taken by Smith was in fact marijuana; and that just 45 minutes before he arrived Smith saw defendant asleep in bed in the bedroom of his apartment and in plain sight on the dresser a cellophane bag containing what he believed to be marijuana. [3] It is reasonable for police officers to act on reports of citizens who have observed criminal conduct. (People v. Lewis, 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579].) [1c] Moreover, Sergeant Mullen considered Smith to be reliable for he learned that Smith was the manager of the apartment house and had a position in the community and a background of military service, and the veracity of Smith's statements was established when he produced the narcotic sample. Thus, when Sergeant Mullen entered defendant's apartment he had reasonable cause to believe that defendant had committed and was committing a felony — possession of marijuana (§ 11530, Health 
Saf. Code); and the arrest without a warrant was valid. (§ 836, Pen. Code.) [4] Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty of committing a felony. (People v.Cockrell, 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116];People v. Schader, 62 Cal.2d 716, 721 [44 Cal.Rptr. 193,401 P.2d 665]; People v. Ingle, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14,348 P.2d 577].)
[1d] Sergeant Mullen, his partner, Smith and the telephone man went to defendant's apartment; Smith knocked on the door and in a "rather loud voice" said that the telephone man was there. Receiving no response, Smith finally opened *Page 343 
the door with a pass key, and all of them entered. Defendant was asleep on the couch. At this point it should be noted that at the trial defense counsel argued the issue of the officers' entry without defendant's consent on his objection of "unlawful search and seizure" to the admissibility of evidence of the contraband; and that in overruling the objection the trial judge found that the officers "had the right to enter the . . . apartment, under the facts and circumstances of this case." However, in his general and rambling arguments that he was unjustly convicted while his roommate was not even arrested, appellant neither raises nor mentions the matter of entry. Under the circumstances we are entitled to assume that he concedes there to be no appellate issue of the propriety of the officers' entry to his apartment; nevertheless we have examined the evidence in the light of the authorities and conclude that it is sufficient to support the trial judge's finding.
Inasmuch as Sergeant Mullen did not rest his right to enter defendant's apartment on the implied consent of the manager who opened the door with his pass key, but on his own belief that defendant and the contraband were in the apartment, defendant had committed and was committing a felony, and if defendant knew the presence of the officers the evidence would be destroyed; and entered for the purpose of arresting defendant, Stoner v.California, 376 U.S. 483 [11 L.Ed.2d 856, 84 S.Ct. 889] does not control. In the latter, entry was made in the absence of Stoner for the purpose of searching his hotel room; he was arrested two days later in another state; and the police entered Stoner's room relying solely upon the consent of the hotel clerk who opened the door with his pass key. While the entry was not forced, it is clear that it was made not only without defendant's consent but without notice of Sergeant Mullen's authority and purpose. The evidence herein presents a situation similar to forced entry without compliance with the notice requirements of section 844, Penal Code. In the recent case of People v.Gastelo, 67 Cal.2d 586, the Supreme Court said at page 587 [63 Cal.Rptr. 10, 432 P.2d 706]: "In Maddox [People v. Maddox,46 Cal.2d 301 [294 P.2d 6]], we held that compliance with the substantially identical notice requirements of Penal Code section844 for making arrests was excused, if the facts known to the officer before his entry were sufficient to support his good faith belief that compliance would have increased his peril or frustrated the arrest. Later cases have included the prevention of destruction of evidence as an additional ground for noncompliance *Page 344 
with section 844. (People v. Covan (1960) 178 Cal.App.2d 416
[2 Cal.Rptr. 811]; People v. Morris (1958) 157 Cal.App.2d 81
[320 P.2d 67].) Ker v. California (1963) 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623] approved the principle of these cases under Fourth Amendment standards of reasonableness."
In People v. Maddox, 46 Cal.2d 301 [294 P.2d 6], the officers knocked on the door, a male voice said wait a minute, they heard retreating footsteps and then kicked the door open and rushed into the kitchen. The court concluded that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not consistent with the good faith belief on the part of the officer that compliance with section844 is excused, his failure to comply does not justify the exclusion of the evidence he obtains. (Pp. 306-307.) "It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844." (P. 306.) In People v. Carrillo, 64 Cal.2d 387
[50 Cal.Rptr. 185, 412 P.2d 377], the entry of the officers followed a knock and observation of suspicious movements; the court upheld it and found that they entered the premises in the reasonable belief that defendant possessed narcotics and that only such an entry would prevent their destruction by defendant (pp. 391-392). (People v. Gastelo, 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706]; see also People v. Smith,63 Cal.2d 779, 797 [48 Cal.Rptr. 382, 409 P.2d 222]; People v.Gilbert, 63 Cal.2d 690, 707 [47 Cal.Rptr. 909, 408 P.2d 365]; and People v. Hammond, 54 Cal.2d 846, 854 [9 Cal.Rptr. 233,357 P.2d 289].)
People v. Gastelo, 67 Cal.2d 586 [63 Cal.Rptr. 10,432 P.2d 706], involved section 1531, Penal Code, with substantially identical notice requirements of section 844, Penal Code. Four officers went to defendant's apartment to execute a search warrant and made a forced unannounced entry; they found defendant asleep. Absent was any evidence that before *Page 345 
they entered the officers believed that contraband was about to be destroyed, and the People sought to justify the forced entry "on the ground that narcotics violators normally are on the alert to destroy the easily disposable evidence quickly at the first sign of an officer's presence." (P. 588.) The Supreme Court rejected the "blanket rule based on the type of crime or evidence involved," and held that an "Unannounced forcible entry . . . cannot be justified on a blanket basis. Otherwise the constitutional test of reasonableness would turn only on practical expediency, and the amendment's primary safeguard — the requirement of particularity — would be lost. Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen. . . .
"Since there was nothing in the present case to justify the officers' failure to comply with section 1531, except an asserted general propensity of narcotics violators to destroy evidence when confronted by police officers, the officers' entry was unlawful." (P. 589.)
Clearly, whether the officers were excused from announcing their authority and purpose before entry is a question of fact. While in Gastelo there was no evidence that the officers in good faith believed that compliance with the notice requirements of the section was excused, in the instant case the record is replete with evidence of Sergeant Mullen's good faith belief that an announced entry would have resulted in a destruction of the contraband. He was cross-examined at length and testified that he entered unannounced with the manager who used his pass key because he had reasonable cause to and did believe that defendant was in the apartment, that near defendant and readily available to him was a quantity of marijuana, that defendant had awakened after Smith knocked and in a "rather loud voice" announced the presence of the telephone man, and remained silent, and that if any more time elapsed and defendant knew the police were present he "would dispose of the bag of marijuana"; that in his opinion there was an emergency "to wit, to preserve what evidence was in there"; and that because of this emergency he entered defendant's apartment with Smith. In finding that Sergeant Mullen had the right to enter defendant's apartment under the circumstances, the trial judge gave credence to the officer's testimony that he had a good faith belief that an announced entry would have resulted in a destruction of the contraband, and believed that the facts known to Sergeant *Page 346 
Mullen at the time of his entry were sufficient to support that belief; we will not disturb the trial judge's determination.
Once lawfully inside the premises the officers observed in plain sight on a coffee table near the divan on which defendant was sleeping a partially burned marijuana cigarette and on top of the dresser a plastic package of marijuana. [5] "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v.California, 374 U.S. 23, 42-43 [10 L.Ed.2d 726, 743-744, 83 S.Ct. 1632] (1963); United States v. Lee, 274 U.S. 559 [71 L.Ed. 1202, 47 S.Ct. 746] (1927); Hester v. United States,265 U.S. 57 [68 L.Ed. 898, 44 S.Ct. 445] (1924)." (Harris v.United States 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; People v. Jolke, 242 Cal.App.2d 132, 148 [51 Cal.Rptr. 171], and cases cited therein.) While a search of the apartment produced other contraband, it was incident to a lawful arrest and valid (People v. Ross, 67 Cal.2d 64, 69 [60 Cal.Rptr. 254, 429 P.2d 606]; People v. Cruz, 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889]), even though it preceded the arrest. [6] As long as the search is supported by evidence sufficient to constitute probable cause apart from that discovered by the search, a search which precedes an arrest is valid. (People v. Simon, 45 Cal.2d 645, 648 [290 P.2d 531].)
[7a] Appellant claims that all he did was share a room in which narcotics were found with another person, and there is nothing to connect him with the contraband since it could have belonged to his roommate. [8a] "Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic. (People v. Redrick,55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) The foregoing elements may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. (People v.Jackson, 198 Cal.App.2d 698, 704 [18 Cal.Rptr. 214].)" (People v. Groom, 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327,388 P.2d 359]; People v. Gory, 28 Cal.2d 450, 456 [170 P.2d 433]; People v. Aguilar, 223 Cal.App.2d 119, 123 [35 Cal.Rptr. 516].)
[7b] The following circumstantial evidence supports the inference that defendant had knowledge of the presence of the marijuana in his apartment and had possession of the same. *Page 347 
(People v. Winston, 46 Cal.2d 151, 161 [293 P.2d 40].) Defendant rented the apartment under an assumed name (People v.Bagley, 133 Cal.App.2d 481, 485 [284 P.2d 36]); he claimed he had just come from New York, but numerous persons were seen going to his apartment staying only a short time; just a few days before, marijuana was seen in his first apartment in a bag similar to one on his dresser; he was asleep in his apartment only 18 inches away from a roach lying on top of a coffee table (People v. Sullivan, 214 Cal.App.2d 404, 407 [29 Cal.Rptr. 515] ); a 190-gram block of marijuana was in a grocery bag in the second drawer of the dresser in a bedroom where 45 minutes earlier he had been in bed; in plain sight on top of the dresser in the bedroom were two plastic bags of marijuana (People v.Mateo, 171 Cal.App.2d 850, 855 [341 P.2d 768]; People v.Flores, 155 Cal.App.2d 347, 348 [318 P.2d 65]); six marijuana roaches were on a shelf in the linen closet of defendant's apartment (People v. Bretado, 178 Cal.App.2d 465, 468 [3 Cal.Rptr. 216]); and on defendant's person was an "alligator clip." The contraband, in more than a little amount, was scattered throughout defendant's apartment in numerous places, in all forms, in various amounts — some in plain sight readily available to defendant; from this and the "alligator clip" on his person, inescapable is the inference that defendant, who was alone in the apartment at the time, knew of the presence of the marijuana, had physiccal control of it and knew it to be a narcotic. The fact that his roommate also occupied the apartment and some of the contraband may have belonged to him, "does not prevent a finding that appellant, too, had possession of the same marijuana. [8b] The decisions make it clear that possession need not be exclusive to support a conviction of possession of a narcotic . . . [Citation.]" (People v. Hamilton, 223 Cal.App.2d 542, 545 [35 Cal.Rptr. 812].)
The judgment is affirmed.
Wood, P.J., and Fourt, J., concurred. *Page 348