No. 18,654.

ELIAS S. MENDEZ *v.* PEOPLE OF THE STATE OF COLORADO.
(336 P. [2d] 706)

Decided March 16, 1959.

Messrs. Mellman, Mellman & Thorn, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Norman H. Comstock, Special Assistant, for defendant in error.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

Plaintiff in error was defendant below.

The record discloses that on February 15, 1955, with leave of court, an information, properly verified, was filed in the trial court charging that the defendant and one Trujillo "did make an assault upon one Mrs. Claire Onofrio * * * with the intent * * * to rob * * *."

This charge is not designated by any number, and across the whole of it appear crossed lines in pencil; how, by whom or when this tampering with the information occurred is not disclosed by the record.

In a "SECOND COUNT" it is charged that defendant and Trujillo "did * * * conspire * * * to do * * * an unlawful act, to-wit, a felony against Mrs. Claire Onofrio which felony was the crime of Assault with Intent to Commit Robbery. * * *."

Through the above underlined words is a heavy line in ink which nearly obliterates the words; the record does disclose that this tampering was consummated on April 13, 1955, pursuant to written request of the district attorney, consented to by defendant's then appointed counsel and ordered by the court. The record discloses no sanction or consent to this mutilation and entire change of the nature of the offense charged by the person who verified the information and signed a

sworn statement "that the offense therein charged was committed of this affiant's own personal knowledge."

There also appears in the record a document purporting to be an information charging that the defendant "did make an assault * * * and * * * did rob, seize, steal, take and carry away THIRTY THREE DOLLARS * * * of the said Mrs. Claire Onofrio."

This document is signed by the district attorney, bears no date, is unverified, bears no filing stamp of the court, bears no authorization of the court for filing or order fixing bond; the names of no witnesses are endorsed thereon. How or when this vagrant information became a part of the record in this case is undisclosed.

Trial before a jury was completed on April 15, 1955. The court instructed the jury that:

*"The first count * * * charges that * * * Mendez did make an assault * * * and * * * did rob, seize, steal, take and carry away Thirty-three Dollars * * *.*

*"The second count * * * charges that * * * Mendez and * * * Trujillo did * * * conspire * * * to do * * * an unlawful act * * * a felony * * * which felony was the crime of robbery * * *."*

The jury found the defendant guilty of:

1. Robbery as charged in the first count.

2. Conspiracy to commit robbery as charged in the second count.

On May 19, 1955, further proceedings were had and in open court sentence was imposed.

"It is the judgment and sentence * * * to the State Penitentiary * * * to be kept * * * at hard labor *on your conviction of assault with intent to commit robbery* * * * not less than seven nor more than ten years.

"It is the further judgment and sentence * * * to the State Penitentiary * * * to be kept * * * at hard labor, on your conviction of conspiracy to commit robbery * * * not less than seven nor more than ten years, both sentences to run concurrently. That is all."

On the same day, the record and proceedings being in

a state of confusion and flux as outlined above, understandably, and compounding the confusion, the clerk of the court issued a mittimus whereby and pursuant to the authority therein granted the defendant was conveyed with all convenient speed to the state penitentiary and gained admittance thereto. The mittimus stated that the defendant had been convicted of "the crime of Assault to Commit Robbery and Conspiracy to Commit Assault with Intent to Commit Robbery. (2 counts)."

On January 24, 1958, the defendant, appearing pro se, filed his petition in the district court for a writ of habeas corpus, seeking his release from the penitentiary. His claim for release is predicated on the undisputed fact that he was only nineteen years of age at the time of the commission of the alleged offenses; that he had been charged with, convicted of, and sentenced for the offenses of (a) assault with intent to commit robbery, and (b) conspiracy to commit assault with intent to commit robbery, and that the mittimus whereby he was restrained of his liberty stated that he had been convicted of the above charges and that by reason of his minority he could not be sentenced to the penitentiary. The court, on February 14, 1958, entered its final order disposing of the habeas corpus proceedings, using the following language:

"At this day come Bert M. Keating, District Attorney, who prosecutes the pleas of the People in this behalf, and the said ELIAS MENDEZ is brought into Court, and by Isaac Mellman, his attorney, also comes.

"And thereupon, this cause comes on to be heard upon the issues joined by the petition, the writ of habeas corpus, and the answer thereto, the same is argued by counsel, and the Court being now sufficiently advised in the premises, doth deny said petition and doth rule that the sentence of the defendant, Elias Mendez, was erroneous — not void *and doth order that the portion on Count One of the Information dated May 19, 1955 be set aside*

*and held for naught* and the Writ of Habeas Corpus *quashed.* [Emphasis supplied.]

"And thereupon, it is ordered by the Court that the defendant Elias Mendez be removed to the County Jail, then to the State Penitentiary at Canon City, Colorado for a sentence of not less than seven (7) years nor more than ten (10) years on conviction of robbery, this sentence to be *Nunc Pro Tunc* as of May 19, 1955 and the time spent shall be applied thereon.

"It is further ordered that the Mittimus be corrected to comply with the Sentence."

On February 19, 1958, another mittimus was issued wherein it is recited that the defendant had been convicted of the crime of "Robbery" and pursuant to which defendant is now confined in the penitentiary. The defendant, through his present counsel, seeks review by writ of error of the order of re-sentence and quashing the writ of habeas corpus, setting forth numerous alleged errors which accrued during the period from the filing of the information until issuance of the remittitur. Numerous glaring errors appear in the record; they are self evident and we consider the record the best and most eloquent evidence thereof.

This court has repeatedly held that habeas corpus cannot be substituted for a review by writ of error. In *Urbanich v. Mayberry,* 124 Colo. 311, 236 P. (2d) 535, it was said:

"The district court in considering the question as to whether the writ of habeas corpus should be made permanent was limited in its inquiry to determine whether the county court acted in excess of its jurisdiction, since only jurisdictional questions can be reviewed by proceedings in habeas corpus. One who suffers from an order or judgment which is merely erroneous has no remedy by writ of habeas corpus, but must proceed by writ of error. *In re Packer,* 18 Colo. 525, 33 Pac. 578; *Hart v. Best, Warden,* 119 Colo. 569, 205 P. (2d) 787. * * *"

Consequently we do not pass upon the alleged errors in the prosecution. We do, however, wish it to be known that we disapprove of any alterations in or tampering in any manner with court documents without the consent of the person preparing, submitting or signing the same. This is doubly true in criminal matters and doubly, doubly true of a criminal information made upon oath, it being the inception and very foundation of a criminal prosecution which may lead to the loss of liberty or even life of an accused person.

■ Turning now to the habeas corpus proceedings, we find from the record that the defendant has been returned to the penitentiary pursuant to a mittimus reciting that he has been convicted of robbery; the jury found the defendant "guilty of robbery as charged in the first count of the information." Strangely but truly the court in *quashing* the writ of habeas corpus ordered that: "the portion on Count One of the Information *dated May 19, 1955* be set aside and held for naught * * *." (Emphasis supplied.)

The court told the jury that Count One charged robbery; the jury found the defendant guilty of robbery as charged in Count One. The mittimus and present imprisonment are for robbery on Count One, notwithstanding that Count One has been set aside and held for naught by the trial judge. By that bold stroke of the trial judge, the verdict of the jury falls; likewise the mittimus, for the reason that there remains no information upon which a conviction can be supported.

■ The warrant of commitment or mittimus pursuant to which the defendant is being restrained of his liberty can have no greater force or legality than the judgment upon which it is issued. The judgment and sentence of February 14, 1958, is void for lack of an information upon which a conviction can stand; as is the mittimus issued thereon.

"The warrant of commitment depends for its validity and effect on the judgment and sentence of the court on

which it is based, as the prisoner is detained, not by virtue of the warrant of commitment, but on account of the judgment and sentence of the court, a certified copy of which is sufficient evidence of the keeper's authority, and he need have no other. There must be a sentence or judgment of conviction sufficient to authorize the commitment of accused; and a commitment cannot be properly based on a vacated judgment." 24 C.J.S. 158, §1607.

The judgment is reversed.

Normally on reversal, we remand the case to the trial court for further proceedings; however, in this case, with knowledge of past proceedings herein and lest there be further confusion, it is hereby ordered that the mittimus issued by the District Court of the City and County of Denver, dated February 19, 1958, whereby the Warden of the State Penitentiary is directed to confine said Elias Mendez in said penitentiary for a period of from seven to ten years, and pursuant to which mittimus said Mendez was, on February 21, 1958, delivered to said warden, as evidenced by his receipt of said date, be declared void as of this date, and the right and authority granted to said warden by said mittimus to keep said Mendez in confinement in the penitentiary shall, on receipt of a copy of this opinion, terminate.

Mr. Chief Justice Knauss and Mr. Justice Doyle dissent.

Mr. Justice Doyle dissenting.

I am unable to agree that the judgment of the district court should be reversed.

The writ of error herein was issued to review an order discharging a rule to show cause in a habeas corpus proceeding.

The petition charges that plaintiff in error, herein called defendant, was convicted of the offenses of assault to commit robbery and conspiracy to commit assault with intent to commit robbery. It further alleged that

he was convicted on both counts of the information and was sentenced to a term of seven to ten years in the penitentiary on each count — the sentences to run concurrently. The petition prays for an order releasing him or in the alternative imposing a valid sentence.

Essentially, the point raised by the defendant is that the sentence is invalid because at the time of the commission of the crime for which he was sentenced, he was a minor. By reason of this fact, he argues that it was the duty of the court to sentence him to the reformatory for an indefinite term.

The record discloses that on April 13, 1955, the day of the trial, the information was amended so as to charge robbery in the first count and conspiracy to commit robbery in the second count. The defendant was rearraigned on the amended counts and trial was had on these charges. The instructions defined the charges as amended, and the verdict of the jury found the defendant guilty of *robbery* and *conspiracy to commit robbery*. The mittimus erroneously described the crimes on which plaintiff in error was convicted as assault to commit robbery and conspiracy to commit assault with intent to commit robbery. This mistake stemmed from the fact that the judge of the district court in pronouncing sentence mistakenly referred to the original information and stated that he was pronouncing sentence on assault to rob and conspiracy to commit that offense. It appears that the trial court in the proceeding now under review, after denying the petition, pronounced the sentence on robbery and ordered that it commence to run from the date of the original sentence. The misdescription in the mittimus inspired the original habeas corpus petition. This issue is simple. If defendant was convicted of robbery he was eligible for a penitentiary sentence. If in fact the conviction was on the charge of assault to rob, the Court was required to sentence to the State Reformatory.

1. *The question whether robbery was filed.*

The brief of the plaintiff in error refuses to recognize that a robbery information was ever filed. This arises from the fact that the court did not enter an express order authorizing the district attorney to file the amended count.

Normally leave of court appears on the face of the information, and it appears on the face of the *original* information herein. Counsel say that the presence of the robbery charge in the record here is unexplained. On this point it is very plain that on the day of the trial the district attorney asked leave to substitute the robbery count for the first count which had been in the information.

"MR. DOWNING: It is on a motion, Your Honor. Mr. Gallegos is here in regard to the Mendez case before the jury comes in. Notice has been filed to amend the Information, Count No. 2, in Case 42176, to quash the second count of conspiracy to commit robbery, instead of conspiracy to commit assault with intent to commit robbery. Mr. Gallegos has indicated he has no objection to this amendment, and we desire in place of the first count of the Information filed, which is assault to commit robbery, the people ask the Court to withdraw the first count and file in its stead Count Number One, the count of robbery."

It is also apparent that the defendant waived all objections to this substitution. His counsel said:

"MR. GALLEGOS: If the Court please, I have been supplied with this amended Information and informed him and we are prepared for trial on that. We are prepared to go to trial. THE COURT: That is on the second count, is that right? MR. DOWNING: Yes. THE COURT: How about the first count, robbery, instead of assault to commit? MR. DOWNING: As a matter of fact, Your Honor, the assault to commit robbery is included in the robbery. MR. GALLEGOS: I have no objection to that at all. THE COURT: Let the record so show."

The defendant was thereupon arraigned upon the charges shown in the amended information and went to trial on the charge of robbery and conspiracy to commit robbery. On April 15, 1955, verdicts of guilty were returned and the defendant now declares that the robbery count which is part of the file has no significance — that its presence is purely accidental. To be sure, the court did not enter an explicit order authorizing this count to be filed. It did enter an order with respect to the assault to rob. However, the count was *in fact* filed with the court and trial proceeded on that charge. In these circumstances, the actual fact of the filing is established. The order authorizing the filing was implicit in everything that was done by the court and in everything consented to by the accused.

The instant amendments were offered *before trial,* and at this stage, it is universally held that there can be changes even of substance. *Collins v. People,* 69 Colo. 353, 195 Pac. 525. See also 42 C.J.S. 1244, Sec. 233, where the author declares that amendments of substance, including those by substitution of counts, are valid.

2. *Is the failure to verify fatal?*

A verification is attached to the questioned robbery count and this is subscribed by the complaining witness, but it is not sworn to. In the view I take, namely, that the amendment of the original information was not a new information, verification was unnecessary and the only justification for the argument is the presence of the verification. Had it been left off there would have been no room for argument.

In any event, verification is for the benefit of the accused and can be waived. This was the holding in the very recent decision of this Court in *Bustamante v. People,* 136 Colo. 362, 317 P. (2d) 885. There timely objection had been made, and the trial court there granted the district attorney twenty-four hours to obtain the verification. In commenting on the necessity for a verification it was said (136 Colo. 365):

"In Colorado it has been held that want of such an affidavit on an information is not jurisdictional. It is for the benefit of the defendant and is waived unless timely objection is made thereto in the trial court. See *Harris v. Municipal Court*, 123 Colo. 539, 543, 234 P. (2d) 1055, and authorities cited therein. Once timely objection is made the verification may be provided before trial at the direction of the trial court. *Brown v. State*, 9 Okla. Cr. 382, 132 Pac. 395.

"In this action prior to the trial the state could have withdrawn the information and, by the same token, it could have had defendant served with a properly verified information. Here defendant was not prejudiced by the amendment; he was never under any misapprehension as to what he was charged with; he was not surprised nor misled; he was never misnamed nor denied an essential allegation. * * * "

The above case is controlling on this question and it needs no further comment.

3. *Was the robbery information quashed?*

The majority hold that the first count, robbery, was actually quashed (by mistake) when the sentence was corrected. I cannot agree that this occurred. The action of February 14, 1958, was a holding by the trial court that the misreference in the sentence to assault to rob was erroneous and not void. The judge thereupon set aside that portion of the *sentence* and substituted a sentence which correctly referred to the conviction of robbery. The court's reference when it said "that portion on Count One of the Information dated May 19, 1955 be set aside and held for naught" was to the previous sentence for these reasons:

a. In the previous clause of the same sentence the court had held that the *sentence* was erroneous.

b. The date referred to by the court, May 19, 1955, was the date of *sentence*. He could not have been referring to the conviction or the filing which had occurred in April.

c. He would not have quashed the habeas corpus and in the same breath set aside the information.

Thus, the proceedings do not in any manner justify the conclusion of the majority that the charge itself was quashed and that the sentence was thereupon also voided.

4. *Are the questions jurisdictional?*

The present question was not raised by the defendant. The resentencing took place on January 24, 1958, which was also the date of the habeas corpus hearing. For that reason, of course, it is not an allegation in the original habeas corpus petition. Moreover, it is not raised by the very able counsel for the plaintiff in error, notwithstanding that they have thoroughly briefed the matter. If it were a matter of jurisdiction, the failure to raise the issue would not prevent its being noticed. However, no defect, jurisdictional or otherwise, is fairly to be read into the proceedings.

Habeas corpus may permissibly question whether the judgment is void. Erroneous rulings are reviewable only by writ of error. *Urbancich v. Mayberry*, 124 Colo. 311, 236 P. (2d) 535. The points raised by defendant concern alleged errors which may only be reviewed by writ of error. Had the instant judgment been brought to this court in such manner, it would have been ruled that the form of the sentence and mittimus were erroneous, and the case would have been remanded for correction. This same result was accomplished in the January 24, 1958, proceedings in the trial court. Hence, there has been no substantial prejudice to the rights of the defendant.

An accumulation of several or even numerous inconsequential errors will not substitute for a single jurisdictional one, and although mistakes such as those revealed are not to be condoned, the Court should not by reason thereof lose its detachment and perspective so as to inflict a substantial injustice on the People of Colorado.

MR. CHIEF JUSTICE KNAUSS joins in this dissent.