260 Cal.App.2d 875 (1968)
67 Cal. Rptr. 459
THE PEOPLE, Plaintiff and Respondent,
v.
JOSEPH ARNOLD MERCHANT, Defendant and Appellant.
Docket No. 13125.
Court of Appeals of California, Second District, Division Two.
April 10, 1968.
*876 Richard Fusilier for Defendant and Appellant.
Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Walter R. Jones, Deputy Attorney General, for Plaintiff and Respondent.
*877 FLEMING, J.
Merchant was convicted of a violation of Penal Code, section 12021, which prohibits felons from possessing concealable firearms. He contests the admissibility of evidence obtained from him before he had been properly advised of his constitutional rights.
Officer Garrison of the Los Angeles Police Department was told by a woman informant that an ex-convict had a gun in his room at a certain address. Garrison concluded the ex-convict was John Joseph Merchant. On 3 May 1966, Garrison and another officer went to the address they had been given, at which they found a one-story house of about five rooms. Before they could knock, appellant Joseph Arnold Merchant opened the inside front door of the house. The outside screen door remained closed. Through the closed screen door Officer Garrison asked appellant if his name was John Joseph Merchant, if he was an ex-convict, and if it was true he had a gun in his possession. When appellant answered each of these questions affirmatively, he was told he was under arrest.
Officer Garrison advised Merchant he could remain silent, he could consult counsel, and his statements might be used against him. Garrison then asked where the gun was. Merchant said it was in his room. "May we go get it?" "Yes," replied Merchant, and led the officers to his room and turned over a revolver and a box of cartridges. With Merchant's consent the officers looked for identification of Merchant under his true name of Joseph Arnold Merchant. While the officers were in his room, appellant said, "You've got me. I'm guilty of possession but I am not going to tell you where I got that gun. I am an ex-con from New York. I served time there for grand larceny. I am now on probation here in California to a Mr. Jackson ..."
Appellant contends he should have been advised of his rights before, not after, he was asked whether he possessed a gun. He argues that when the officers discovered he was an ex-convict who lived at an address at which an ex-convict was reported to possess a gun, they had reached the point at which Miranda v. Arizona, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] and People v. Dorado, 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361], required them to advise him of his rights.
[1] 1. Under the Miranda ruling "the prosecution may not use statements ... stemming from custodial interrogation ... unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *878 By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (384 U.S. at p. 444 [16 L.Ed.2d at p. 706], footnote omitted.) Appellant was certainly not in custody at the time he was first questioned. The appearance of two plainclothes officers outside the front screen door of his residence in no sense amounted to an arrest or detention. Nor had Merchant been deprived of his freedom of action in any significant way. He could have closed the front door and returned to his room, and the police would have been unable legally to follow him, because they lacked reasonable cause to arrest him until he had answered their questions.
[2] 2. Yet our determination that Merchant was not in custody does not entirely settle the issue. When an investigation reaches the stage of accusation, the accused is entitled to the assistance of counsel and to be effectively informed of his constitutional rights. (People v. Dorado, 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361]; Escobedo v. Illinois, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; Massiah v. United States, 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199].) The accusatory stage is reached on the concurrence of three circumstances: "... the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements...." (Escobedo v. Illinois, at pp. 490-491 [12 L.Ed.2d at pp. 985-986].) These three elements may be briefly referred to as (1) focus; (2) custody; and (3) process. The adversary system begins to operate when these three elements first coincide and thereby shift the stage from investigatory to accusatory. (Escobedo v. Illinois, at p. 492 [12 L.Ed.2d at p. 986]; People v. Dorado, at p. 347.)
At first blush the rule in Miranda may seem to have rendered superfluous the rule in Escobedo, for Miranda undertakes to establish rules governing all custodial interrogations, and Escobedo covers a portion of such interrogations. But the existence of custody is not limited to the external fact of arrest, detention, restraint, or significant deprivation of freedom but may be based on the reasonable belief of an individual under questioning by one in authority that he must submit to interrogation. (People v. Arnold, 66 Cal.2d 438, 447 *879 [58 Cal. Rptr. 115, 426 P.2d 515].) Because of this, in determining whether evidence of a confession is admissible it may still be necessary to consider the elements of the accusatory stage  focus, custody, and process.
In the case at bench suspicion of a crime had not yet focused on Joseph Arnold Merchant. Concededly, Merchant with his guilty knowledge may have felt himself caught by the spotlight of exposure. But the focus on a particular suspect for an unsolved crime cannot stray too far from the objective knowledge of the police without removing all meaning from the concept of focus. (Cf. People v. Furnish, 63 Cal.2d 511, 516 [47 Cal. Rptr. 387, 407 P.2d 299].) The present case involved a routine police investigation carried out in an inoffensive manner  the receipt of a tip from an unproved informant, followed by an attempt by the police to identify the suspect and to evaluate the tip by inquiry from the most direct and likely source of information. The commission of any crime was as yet unknown. The interest of the police in the suspect was purely exploratory. We recall the statement of the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 481 [16 L.Ed.2d 694, 727, 86 S.Ct. 1602, 10 A.L.R.3d 974] that its "... decision does not in any way preclude police from carrying out their traditional investigatory functions."
Nor do we find the existence of a process of interrogations whose purpose was to elicit incriminating statements or a confession. (Escobedo v. Illinois, 378 U.S. 478, 492 [12 L.Ed.2d 977, 986, 84 S.Ct. 1758]; People v. Dorado, 62 Cal.2d 338, 347 [42 Cal. Rptr. 169, 398 P.2d 361].) We briefly distinguish such a process of interrogations from one whose purpose is investigatory. As we understand Escobedo and Miranda, investigatory questioning of a suspect continues to play an important role in the detection of crime. At the beginning of an inquiry, both the police and a suspect have valid interests which are served by the maintenance of free communication with each other. (People v. Ford, 234 Cal. App.2d 480, 488, 490-492 [44 Cal. Rptr. 556].) At the outset of the interrogation in the present case, for example, as conceivable as the result which in fact followed was the possibility that Merchant would convince the police that further investigation was unnecessary because their suspicions had been triggered by a discarded girl friend trying to make trouble for him, by his empty boasts of criminal prowess while liquored up in a *880 saloon, by his habit of practicing quick draw with a dummy revolver to impress children, or by other innocent conduct which had been misinterpreted. A premature inhibition of inquiries may thus defeat the interests of both society and the individual.
We do not think the questioning of Merchant before his arrest amounted to a process of interrogations whose purpose was to elicit a confession. True enough, Merchant's affirmative answer to the question, do you have a gun, established the fact of the crime and the identity of the criminal. Thus, the question did elicit an incriminating statement. But looking at the case at bench from the viewpoint of the officers, no reasonable accusation of Merchant was possible until he had affirmatively answered the question about possession of the gun. Merchant's answer, in other words, provided the catalyst which precipitated unverified suspicion into specific accusation. In those questioning of suspects which have been found to be a process of interrogations designed to elicit incriminating statements, the police were seeking answers whose substance and whose significance they already knew, or thought they knew, as added proof to bind the accused to a known crime to which he was already linked by some evidence. (Escobedo v. Illinois, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; People v. Dorado, 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361].) In those instances the catalytic function had been performed by other information. But here, the officers at the time of their questioning had no reasonable cause to arrest and search Merchant, and their quest was truly investigatory in that it sought information about a fact of which they had no existing knowledge.
Nor was there any evidence to suggest that Merchant at the time of his initial questioning could have reasonably believed he was under restraint or restricted in his freedom of action in any significant way. None of the circumstances which may reasonably suggest to a suspect that he is under restraint  confrontation with unfavorable evidence, questioning in a hostile environment, questioning under pressure  were present.
[3] Since Merchant's initial questioning occurred before police suspicion had focused on him, since it did not amount to a process of interrogations designed to elicit incriminating statements, and since there was no basis for a reasonable belief by the suspect that he was under restraint, we conclude *881 that this questioning took place at a time the police were performing their investigatory functions and prior to the time they were required to advise Merchant of his constitutional rights. (People v. Cotter 63 Cal.2d 386, 393 [46 Cal. Rptr. 622, 405 P.2d 862]; People v. Goedecke, 65 Cal.2d 850, 858-859 [56 Cal. Rptr. 625, 423 P.2d 777]; but see People v. Chavira, 253 Cal. App.2d 928 [61 Cal. Rptr. 407].)
[4] 3. As to events which occurred after his arrest, appellant contends the failure of the police to advise him of an indigent's right to free counsel required the exclusion from evidence of his subsequent disclosure of the location of the gun, the gun itself, and his second confession. Although at the time of arrest Merchant was advised of his right to remain silent and his right to counsel, concededly he was not advised of the availability to indigents of free counsel, advice not given because his arrest preceded the establishment of the requirement in Miranda v. Arizona, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The issue is whether this error was non-prejudicial beyond a reasonable doubt.
First, when Merchant was properly arrested inside the house, his room became subject to a search incident to his arrest, and the gun was properly seized. (People v. Lara, 67 Cal.2d 365, 373 [62 Cal. Rptr. 586, 432 P.2d 202]; People v. Cockrell, 63 Cal.2d 659, 667 [47 Cal. Rptr. 788, 408 P.2d 116].) Even if we disregard the uncontradicted evidence of consent to the search and assume that Merchant told the officers nothing about the gun's location, there is no reason to doubt it would have been found. Consequently his statement disclosing the exact location of the gun did not contribute to its finding and cannot detract from the gun's admissibility in evidence. (Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 [64 L.Ed. 319, 321, 40 S.Ct. 182, 24 A.L.R. 1426].)
Second, other than the location of the gun, Merchant's statements after arrest added nothing of substance to the information he had previously given the police except the name of his probation officer and Merchant's state of origin. Moreover, no objection was made to the admission of these statements at the time of trial, and an objection made for the first time on appeal comes too late. (People v. Perez, 62 Cal.2d 769, 774 [44 Cal. Rptr. 326, 401 P.2d 934]; People v. Castro, 257 Cal. App.2d 643, 646 [65 Cal. Rptr. 62]; People v. Warrick, 249 Cal. App.2d 1, 3 [57 Cal. Rptr. 121].) [5] California law requires us to disregard error which is nonprejudicial (Cal. Const., art. VI, § 13; People v. Jacobson, 63 *882 Cal.2d 319, 330-331 [46 Cal. Rptr. 515, 405 P.2d 555]; People v. Cotter, 63 Cal.2d 386, 396 [46 Cal. Rptr. 622, 405 P.2d 862]), and federal law permits us to do so in the case of federal rights when the error is nonprejudicial beyond a reasonable doubt (Chapman v. California, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824]). We conclude that the admission of these statements, if error it was, was harmless beyond a reasonable doubt and did not contribute to the verdict against appellant. (People v. Alesi, 67 Cal.2d 856, 863 [64 Cal. Rptr. 104, 434 P.2d 360].)
The judgment is affirmed.
Roth, P.J., and Herndon, J., concurred.