[Crim. No. 17382. Second Dist., Div. One. Apr. 2, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
DENNIS RAY McLEAN, Defendant and Respondent.

## COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Maurice H. Oppenheim, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, James L. McCormick, Thomas J. Hutchins and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**LILLIE, J.**—An information charged defendant with possession of heroin (§ 11500, Health & Saf. Code), and alleged one prior felony conviction. His motion to suppress evidence under section 1538.5, Penal Code, was heard before the trial of the cause. One witness, Officer Michael Davis, testified. The trial court found as a matter of law that the evidence was unlawfully seized, granted the motion and dismissed the case on its own motion pursuant to section 1385, Penal Code. The People appeal from the order granting the motion and dismissing the case.

Around the first of March, 1969, Officer Davis and his partner were summoned to the Stop-and-Go Market to take an armed robbery report; Mrs. Beckner, a clerk, had been robbed. In the course of her conversation regarding the robbery, Mrs. Beckner mentioned to the officers that "There is an individual who comes—there is a man that comes into this store daily and he's very—he dresses sort of funny. He buys a lot of balloons and I do believe that the man is packaging some kind of narcotics. . . . He lives across the lot in the apartments"; that every day this man buys anywhere from one to three packages of balloons—there are six to eight balloons to a package; and that it is "just unusual because the majority of [my] customers don't come in and buy balloons daily." When Officer Davis suggested that perhaps this person had a love for children or gets a kick out of blowing up balloons, she said, "she believed that this individual wasn't buying balloons for children."

On April 3, 1969, around 10 p.m., Officer Davis and his partner, on

patrol, passed the market and noticed Mrs. Beckner in front; since it was unusual for her to be outside they stopped. Referring to defendant who was walking with a female through the parking lot, she said to Officer Davis, "There is the man that buys all the balloons." Officer Davis has a background and experience in narcotics investigations, has worked as an undercover narcotics officer purchasing marijuana, heroin, dangerous drugs and narcotic paraphernalia and has come in contact with and arrested persons involved with contraband; as a police officer he has arrested others in narcotic cases, is familiar with the means of packaging various kinds of contraband and knows that balloons are one of the common forms of containers —"balloons usually refer to a great quantity of narcotics"—and it is common for someone engaged in the narcotics traffic to have large quantities of balloons. Thus, Officer Davis approached defendant and asked him for identification; he testified, ". . . upon asking Mr. McLean for some identification, Mr. McLean—I came to the conclusion he was under the influence." About this time defendant's female companion departed; she walked away without restriction and no effort was made to detain her. Defendant produced from his rear pocket an identification card, then he made a sudden gesture with his right hand toward his left T-shirt pocket whereupon Officer Davis asked defendant if he had anything in his pocket that was illegal to which defendant replied, "Yes, speed [Methedrine]," at which time the officer reached into defendant's left T-shirt pocket and drew out a green balloon containing heroin. Not more than 15 seconds elapsed between the time the officer asked defendant for identification and the time defendant told him he had "speed."

The sole issue is whether the balloon of heroin was lawfully recovered.

■ "It is well established that a police officer in the discharge of his duties may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of those duties." (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Stout,* 66 Cal.2d 184, 191-192 [57 Cal.Rptr. 152, 424 P.2d 704]; *People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658].) ■ Each case must be judged on its own facts, and the reasonableness of the officer's decision to make inquiry is determined in the light of the circumstances as they appear to him at the time he is required to act. (*People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57].) ■ However, "the circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based on an objective perception of events rather than the subjective feelings of the detaining officers. (See also, *People* v. *Moore,* 69 Cal.2d 674, 683 [72 Cal. Rptr. 800, 446 P.2d 800].)" (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 426

[82 Cal.Rptr. 484, 462 P.2d 12].) Here defendant, whose name Mrs. Beckner apparently did not know but whom she had described to Officer Davis as dressing "sort of funny" and living in the apartments across the lot, for some time had been observed by her making repeated daily purchases of from 6 to 24 balloons which was unusual "because the majority of her customers don't come in and buy balloons daily." This information considered by the officer in the light of his past experience in the narcotic field rationally suggested to him some activity out of the ordinary relating to a crime that had taken or was taking place and that the person pointed out to him by Mrs. Beckner was thus involved. (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12].) It is true that where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Moore,* 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 96 [41 Cal.Rptr. 290, 396 P.2d 706]) and an occasional purchase of balloons would indicate no more than that they were being bought for children, but repeated daily purchases of a quantity of balloons over a period of time are, to the experienced officer, not as consistent with innocent as with criminal activity and more reasonably suggest to him a narcotic rather than an innocent activity. That the officer was mindful of any possible innocent aspect of the balloon purchases but then, in the light of his experience, rejected the same is found in his initial suggestion to Mrs. Beckner "Well, maybe this individual has a great love for children or gets a lot of kicks out of blowing up balloons, or probably did." While a month had passed since Mrs. Beckner first gave the information to Officer Davis, it is apparent that she did not know his name and could only describe his dress and generally where she thought he lived; further, her last reference to him, "There is the man that *buys* all the balloons" indicates that his daily balloon purchases had continued and were current. Although this was not enough for an arrest, " 'circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning' " (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 96 [41 Cal.Rptr. 290, 336 P.2d 706]; *People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]; *Jackson* v. *Superior Court,* 274 Cal.App.2d 656, 660 [79 Cal.Rptr. 502]), and in the light of Mrs. Beckner's information and identification of the man it would have been unreasonable for the officer not to have made inquiry. (See *People* v. *Jolke,* 242 Cal.App.2d 132, 147 [51 Cal.Rptr. 171].) Upon asking defendant for identification the

officer "came to the conclusion that he was under the influence"; and after producing an I.D. card from a rear pocket, he saw defendant make a sudden gesture with his right hand to his left T-shirt pocket. At this point the circumstances were such as to create a rational suspicion that defendant was carrying something illegal which justified further questioning; thus, the officer's second question was if he had anything in his pocket that was illegal.

Respondent complains that when he was asked this question he was not given warnings as to the right to remain silent and to counsel, citing *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and argues that in the absence of his admission, "Yes, speed," there was no probable cause to arrest or search him. In *Miranda* the Supreme Court defined custodial interrogation to mean "questioning initiated by law enforcement officers after a person had been taken into custody or otherwise deprived of his freedom of action in any significant way." (384 U.S. at p. 444 [16 L.Ed.2d at p. 706].) Although detained for questioning defendant certainly was not in custody and his temporary detention was in no sense tantamount to an arrest. (*People* v. *Alcala,* 204 Cal.App.2d 15, 19 [22 Cal.Rptr. 31].) The purpose of temporary detention for questioning is to enable law enforcement officers to determine whether to make an arrest, investigate further or take no action because they are satisfied with the explanation given. Here Officer Davis' decision about what to do next could only be reached by making further inquiry. Respondent in his brief concedes that probable cause for arrest on a specific criminal charge did not then exist; no accusation had been or could have been made at that time; even reasonable suspicion does not constitute probable cause to make an arrest. ". . . persons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive." (*People* v. *Manis,* 268 Cal.App.2d 653, 669 [74 Cal.Rptr. 423]; *People* v. *Glover,* 270 Cal.App. 2d 255, 257 [75 Cal.Rptr. 629].) We do not think the holding in *People* v. *Ceccone,* 260 Cal.App.2d 886 [67 Cal.Rptr. 499], relied upon by respondent, is inconsistent. There the officers had probable cause to believe defendant was driving a stolen vehicle and was in possession of marijuana and it appeared unlikely that they would have let him go, thus defendant was constructively in custody. The court said at pages 892-893: "Once the investigating officer has probable cause to believe that the person being detained for questioning has committed an offense, the officer cannot be expected to permit the suspect to leave. At that point, at the latest, the interrogation becomes custodial and prior to any further questioning the suspect must be warned of his rights." Here that point had not been

reached at the time the officer asked the second question. "Such questioning was not more than preliminary investigation, not the process of interrogation which triggers the *Miranda* rules. (*People* v. *Mercer,* 257 Cal.App. 2d 244 [64 Cal.Rptr. 861]; *People* v. *Autterson,* 261 Cal.App.2d 627, 636 [68 Cal.Rptr. 113]; *People* v. *Merchant,* 260 Cal.App.2d 875, 879 [67 Cal.Rptr. 459].)" (*People* v. *Glover,* 270 Cal.App.2d 255, 258 [75 Cal.Rptr. 629].)

It is true that "[t]he existence of custody as an element of the accusatory stage does not depend on the subjective intent of the interrogator but upon whether defendant is placed in a situation in which he reasonably believes that his freedom of movement is restricted by pressures of official authority" (*People* v. *Kelley,* 66 Cal.2d 232, 246 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Arnold,* 66 Cal.2d 438, 447 [58 Cal.Rptr. 115, 426 P.2d 515]), but here there is no evidence either that defendant was deprived of his freedom of action in any significant way or that defendant believed that his freedom of movement was restricted by pressures of official authority. As far as the police were concerned, defendant then could have walked away since there was no reasonable cause to arrest him; as for defendant, he did not testify concerning this matter, and the evidence shows only a momentary detention not prefaced with an order to stop but by request for identification made in a quiet, inoffensive, casual manner, and lasting only a matter of seconds. During this time defendant's female companion, who had stopped with him, walked away. The circumstances simply were not the kind that would lead a reasonable person to believe his freedom of movement was restricted.

Nor does the evidence show that the officer's inquiry reached the stage of accusation under *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; or *Massiah* v. *United States,* 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199]. According to *Escobedo* v. *Illinois,* 378 U.S. at pages 490-491 [12 L.Ed.2d at p. 986], the accusatory stage is reached when "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements . . . ." Suspicion of an unsolved crime had not yet focused on defendant; in fact, the commission of any crime was as yet unknown to the officers and their interest in defendant was purely exploratory. Their investigation was still general in nature. *Miranda* does not preclude police from carrying out their traditional investigatory functions. (384 U.S. at p. 481 [16 L.Ed.2d at p. 727].)

Nor do we find in the two questions asked ([1] defendant's identification; [2] if he had anything illegal in his pocket) the existence of a process

of interrogations, the purpose of which was to elicit incriminating statements or a confession. "[A]nything . . . that was illegal" referred to no particular object or contraband; the inquiry was still general and under the circumstances was a routine means of commencing an investigation. While defendant's answer established the fact of a crime, this was not a situation in which the officer was seeking answers from defendant, the substance and significance of which he already knew in order to link him with a known crime. (*People* v. *Merchant,* 260 Cal.App.2d 875, 881 [67 Cal.Rptr. 459].) Actually Officer Davis then had no reasonable cause to arrest and search him and his query sought information about a fact of which he had no existing knowledge. Defendant was not confronted with any unfavorable evidence, he was not questioned in a hostile environment, questions were brief and not numerous, he was accused of nothing and certainly was not questioned under any pressure. In the light of the foregoing we conclude that the inquiry was general and made when defendant was not yet in custody and while the officer was performing an investigatory function prior to the time he was required to advise defendant of his constitutional rights. (*People* v. *Goedecke,* 65 Cal.2d 850, 858-859 [56 Cal.Rptr. 625, 423 P.2d 777]; *People* v. *Cotter,* 63 Cal.2d 386, 393 [46 Cal.Rptr. 622, 405 P.2d 862]; *People* v. *Merchant,* 260 Cal.App.2d 875, 881 [67 Cal. Rptr. 459].)

██ When defendant answered that he had "speed," known to the officer to be Methedrine (actually a misrepresentation by defendant since his pocket contained heroin), it was proper for Officer Davis to arrest him for a violation of section 11910, Health and Safety Code. ██ Officer Davis had probable cause to believe defendant was committing a felony in his presence when he reached into defendant's pocket and found it contained a balloon of heroin. (*People* v. *Leos,* 265 Cal.App.2d 822, 825 [71 Cal.Rptr. 614].) ██ As pointed out in *People* v. *Mickelson,* 59 Cal.2d 448, at pages 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]: "Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search." ██ ██ "When probable cause to arrest exists at the outset, a search preceding the formality of a substantially contemporaneous arrest may be incident thereto (*People* v. *Cockrell,* 63 Cal.2d 659, 666-667 [citation]) . . . ." (*People* v. *Terry,* 70 Cal.2d 410, 429 [77 Cal.Rptr. 460, 454 P.2d 36]); and the fact that the pocket contained heroin and not "speed" does

not alter the legality of the search. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 157 [81 Cal.Rptr. 613, 460 P.2d 485].)

The order is reversed.

Wood, P. J., and Thompson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 28, 1970.