Opinion
ALARCON, J.
The People have appealed from an order of the trial court granting defendant’s motion under section 1538.5 of the Penal Code and dismissing the action.

Facts

Based on an anonymous telephone tip, Officer Fisher went to a specified address to set up a surveillance, to determine whether defendant Aikens and another man, Sparks, were selling marijuana to teenagers from their house. On two occasions, the officer staked out the premises, during which time he saw numerous young people enter and leave the house, some of whom appeared to be under the influence of some substance when they left. During the first stakeout, October 10, 1975, the officer saw defendant Aikens enter the house and leave approximately five minutes later smoking a pipe in a manner which led the officer to believe it contained marijuana. The officer did not approach defendant.
During the surveillance on October 17, the officer observed defendant and Sparks come out of the house; they were joined by a third person, who talked to them, and then all three went back to the house for fifteen minutes. When the three came out again, they began walking down the *Supp. 14 street. The officer and his partner followed in an unmarked vehicle. The third person, named Lauderdale, was holding a “real slim what appeared to be a hand-rolled cigarette. . . .” The officers got out of the vehicle, identified themselves as police officers, and Lauderdale threw the cigarette to the ground. Officer Fisher picked up the cigarette, examined it and concluded that it contained marijuana. He then placed Lauderdale under arrest. Officer Fisher then asked, “Does anybody else have any weed?” The statement was directed to all three men. Respondent answered, “I only have one joint” and handed the officer his notebook, which contained a marijuana cigarette.
Respondent was then placed under arrest and advised of his Miranda rights.
Thereafter, the officer took all three men back to the house which had been under surveillance, obtained oral and written consent from defendant to search the house, and located therein three guns, including a sawed-off shotgun, and approximately one hundred and forty grams of marijuana.
The trial court suppressed all of the physical evidence on the basis that defendant should have been informed of his Miranda rights prior to the officer’s question, “Anybody else got any weed?” The judge stated, “It seems to me that the investigation had centered upon this defendant at the time he made that statement and that it was seeking an incriminating response.” Later, the court explained: “What suddenly strikes me is that the law has got us in a kind of a box where Mr. Fisher knew too much about the defendant. If he had just gone on the street, you know, wandered out of the park and saw Mr. Lauderdale throw down the cigarette and picked it up and said, ‘Anybody else got any weed?’, fine. But in this situation in that he knows more about Mr. Aikens, he’s not so fine because he knows more than he should.”

Discussion

Under Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], the duty of the police to advise a defendant of his Fifth and Sixth Amendment rights arises “when the individual is first subjected to policé interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way.” (At p. 477 [16 L.Ed.2d at p. 725].)
*Supp. 15 A determination of whether the officer should have informed defendant of his Miranda rights before asking the first question requires inquiiy into the following areas:
1. Was defendant “in custody” or “deprived of his freedom of action in any significant way?”
2. Was defendant “interrogated” by the police officer?
3. If the investigation had “focused” on defendant, is it relevant that it was an investigation concerning a crime other than the one for which he was questioned and arrested?
1. Custody:
In a recent decision, the California Court of Appeal discussed the test to determine when a defendant is in “custody” for Miranda purposes. “Custody is an objective condition. . . . When an arrest has not yet taken place, the factors considered in deciding whether custody has attached are many. Among the most important are: (1) the site of the interrogation; (2) whether the investigation has focused on the suspect; (3) whether the objective indicia of arrest are present; and (4) the length and form of the questioning. . . . (Fn. 10.) Prior to Miranda the test applied to decide whether an investigation had reached a point where an attorney had to be afforded a defendant was whether the investigation had begun to focus on the suspect. (Citations.) Since Miranda, however, the test is simply whether the suspect is in custody. (Citations.) Focus, however, remains an element in deciding whether custody has taken place.” (People v. Herdan (1974) 42 Cal.App.3d 300, 306-307 [116 Cal.Rptr. 641].)
In applying the foregoing test, the California Supreme Court has required trial courts to determine whether a reasonable man in defendant’s position would have believed that he was not free to leave; that he was “in custody.” In People v. Arnold (1967) 66 Cal.2d 438, 449 [58 Cal.Rptr. 115, 426 P.2d 515], the Supreme Court discussed whether the district attorney should have informed |a suspect of her Miranda rights after summoning her to his office before interrogating her concerning the death of her child. The court said: “On retrial, . . . [t]he trial court should also consider the extent to which the authorities confronted defendant with evidence of her guilt, the pressures exerted to *Supp. 16 detain defendant, and any other circumstances which might have led defendant reasonably to believe that she could not leave freely.”
The United States Supreme Court interpreted the term “custodial interrogation” in Beckwith v. United States (1976) 425 U.S. 341 [48 L.Ed.2d 1, 96 S.Ct. 1612], in a case where Internal Revenue Service agents had visited defendant in his home for the purpose of auditing his tax return. The court said at page 347 [48 L.Ed.2d at p. 8]; “Although the ‘focus’ of an investigation may indeed have been on Beckwith at the time of the interview in the sense that it was his tax liability which was under scrutiny, he hardly found himself in the custodial situation described by the Miranda court as the basis for its holding. Miranda specifically defined ‘focus,’ for its purposes, as ‘questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ ”
Following Beckwith, the United States Supreme Court in Oregon v. Mathiason (1977) 429 U.S. 492 [50 L.Ed.2d 714, 97 S.Ct. 711] more narrowly defined the meaning of the term “in custody” for Miranda purposes. In the Mathiason case, defendant, suspected of having committed a burglary, was contacted by a police officer and asked to come to the police station for questioning. Defendant met the officer there as agreed and following some questioning, admitted having committed the crime. The Oregon Supreme Court had found that the interrogation took place in a “coercive environment” and that defendant should have been informed of his Miranda rights prior to questioning. The United States Supreme Court reversed, stating: “Miranda warnings are required only where there has been such a restriction on a person’s freedom as to render him ‘in custody.’ It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.” (Oregon v. Mathiason, supra, at p. 495 [50 L.Ed.2d at p. 719, 97 S.Ct. at p. 714].)
Defendant in the instant case was not “in custody” at the time of the officer’s general inquiry, as that term is defined by the United States Supreme Court.
2. Was defendant “interrogated?”
In Miranda v. Arizona, supra, the court explained at pages 477-478 [16 L.Ed.2d at p. 725]: “Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . General *Supp. 17 on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.”
As explained by the following decisions, the distinction between on-the-scene investigative questioning and coercive interrogation often turns on whether, at the time the questions are asked, the officer has probable cause to believe that defendant has committed a crime and asks questions to which he believes he knows the answers in an effort to force defendant to incriminate himself; or whether, on the other hand, he is merely asking questions as part of an investigation, where he does not know the answers in advance and is seeking information.
An example of the latter form of questioning was found in People v. McLean (1970) 6 Cal.App.3d 300 [85 Cal.Rptr. 683]. Officers had been alerted by a storekeeper that she was suspicious of defendant, who dressed oddly and bought a large number of balloons from her. The officers approached defendant on the store parking lot and questioned him. The court said at pages 307-308: “. . . [T]he commission of any crime was as yet unknown to the officers and their interest in defendant was purely exploratory. Their investigation was still general in nature____ Nor do we find in the two questions asked ([1] defendant’s identification; [2] if he had anything illegal in his pocket) the existence of a process of interrogations, the purpose of which was to elicit incriminating statements or a confession. ‘[A]nything ... that was illegal’ referred to no particular object or contraband; the inquiiy was still general and under the circumstances was a routine means of commencing an investigation. While defendant’s answer established the fact of a crime, this was not a situation in which the officer was seeking answers from defendant, the substance and significance of which he already knew in order to link him with a known crime. (Citation.) Actually Officer Davis then had no reasonable cause to arrest and search him and his query sought information about a fact of which he had no existing knowledge. Defendant was not confronted with any unfavorable evidence, he was not questioned in a hostile environment, questions were brief and not numerous, he was not accused of anything and certainly was not questioned under any pressure. In the light of the foregoing we conclude that the inquiry was general and made when defendant was not yet in custody and while the officer was performing an investigatory function prior to the time he was required to advise defendant of his constitutional rights.”
*Supp. 18 In the within case, at the time the officers stopped the three companions on the street, there existed no probable cause for the arrest of appellant merely because he was walking with someone who was smoking marijuana. As stated in People v. Manis (1969) 268 Cal.App.2d 653, 669 [74 Cal.Rptr. 423]: “. . . [P]ersons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the question has ceased to be brief and casual and become sustained and coercive.”
In People v. Merchant (1968) 260 Cal.App.2d 875 [67 Cal.Rptr. 459], police had received a tip that defendant, an ex-convict, had a gun in his house. They went to the house and asked him questions through the screen door. After telling the officers his name, he answered “yes” to questions concerning whether he was in fact an ex-convict and whether he had a gun on the premises. The court said at page 878: “When an investigation reaches the stage of accusation, the accused is entitled to the assistance of counsel and to be effectively informed of his constitutional rights. (Citations.) The accusatory stage is reached on the concurrence of three circumstances: \ . . the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements____’ ”
At page 880, the court explained: “In those questionings of suspects which have been found to be a process of interrogations designed to elicit incriminating statements, the police were seeking answers whose substance and whose significance they already knew, or thought they knew, as added proof to bind the accused to a known crime to which he was already linked by some evidence.”
In People v. Quicke (1969) 71 Cal.2d 502 [78 Cal.Rptr. 683, 455 P.2d 787], the police had come upon defendant in a parked car, slumped over the body of a girl in the back seat. The police asked what had happened, and defendant immediately confessed to having killed her. In holding that prior to asking the question, the police need not have informed defendant of his Miranda rights, the court said: “We do not find a long series of probing queries which were designed to elicit incriminating statements.” (People v. Quicke, supra, at p. 514.)
*Supp. 19 To the same effect, see Lowe v. United States (9th Cir. 1969) 407 F.2d 1391 and People v. Ceccone (1968) 260 Cal.App.2d 886, 89l-894 [67 Cal.Rptr. 499].
At the time the officer in the instant case asked, “Does anybody else have any weed?” he had no way of knowing what the answer would be; the mere fact that he had seen defendant a week before smoking a pipe in a manner which he thought he recognized as marijuana smoking, would not provide reasonable suspicion that defendant had marijuana on his person on the date in question. The officer testified:
“The Court: What was the purpose of the question that you put to everybody there, ‘Does anybody else have any weed’?
“The Witness: Well, your Honor, after seeing Mr. Lauderdale throw the marijuana to the ground, it was just a general statement that I made. It wasn’t—
“The Court: Were you seeking a response from somebody to that question?
“The Witness: Well, yes, I guess I was. I was seeking a response. I just made that statement, ‘Does anybody else have any weed?’, and if they hadn’t said anything then I wouldn’t ask anything else about it. In other words, Mr. Aikens—
“The Court: You would have just taken Mr. Lauderdale away and talked to him and left the others alone.
“The Witness: Talked to the other two and got the names and addresses and then let them go.”
We conclude that defendant was not interrogated, and there was no need to inform him of his Miranda rights prior to asking the first question.
3. Investigation concerning a different crime:
*Supp. 20 The court stated that investigation had centered on the defendant at the time the officer approached him. However, the investigation, to the extent that it had “centered,” concerned another crime; the officer suspected that defendant was selling marijuana to teenagers from his home. The officer, at the time he approached and questioned the three men, did not question them concerning that crime, nor his surveillance of them, but concerning a crime he had just seen committed—the possession of marijuana by one of the three on the street.
Questioning of a suspect, without warnings, is valid where the suspect is under suspicion for a different crime.
In People v. Alesi (1967) 67 Cal.2d 856 [64 Cal.Rptr. 104, 434 P.2d 360], officers had a warrant to arrest defendant for selling heroin. At page 859, the court explained that, in executing the warrant, one of the officers searched defendant and found a marijuana cigarette in his shirt pocket. The officer asked defendant if the cigarette was his, and if it was marijuana; defendant answered “yes” to both questions. In concluding that the questions did not violate Miranda, the court said at page 865: “People v. Garavito (1967) 65 Cal.2d 761 ..., also involving a brief police interrogation without relevant admonitions, is factually distinguishable. In that case the interrogation involved the vejy object, heroin, the possession of which caused the arrest. By contrast, here the officers discovered a new crime unrelated to the charges for which the defendant had been arrested, and they were obligated to make an on-the-scene investigation to ascertain the responsibility of those present. The instant case is factually analogous to People v. Brooks (1965) 234 Cal.App.2d 662, 668-671 . . . , in which the defendant was validly arrested as a robbery suspect and searched. The search revealed four marijuana cigarettes on his person, and the arresting officer asked him if they were marijuana to which he replied in the affirmative. Although the defendant was thereafter exonerated on the robbery, the court held the statement admissible on a charge of marijuana possession.”
No suspicion had focused on defendant concerning the marijuana thrown on the street by Lauderdale; thus, the questions were not violative of Miranda.

*Supp. 21
Conclusion

The order granting the motion to suppress and dismissing the action is reversed.
Cole, P. J., and Wenke, J., concurred.