[No. H009834. Sixth Dist. Apr. 5, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO JAVIER VASQUEZ, Defendant and Appellant.

COUNSEL

Rebeccah B. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Clifford K. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WUNDERLICH, J.—**

*Statement of the Case*

Defendant Francisco Javier Vasquez appeals from a judgment entered after the trial court found him guilty of possession of marijuana for sale and

two counts of selling marijuana. (Health & Saf. Code, §§ 11359, 11360, subd, (a).) On appeal, he claims the court erred in denying his motion to suppress marijuana seized from him. We affirm the judgment.

*Facts*

At approximately 2:30 p.m. on November 26, 1991, Officer Gilbert Torres of the San Jose Police Department was on Welch Avenue, an area known for providing "curb service" drug sales. He observed defendant make contact with the occupants of three or four separate cars. Each time, defendant would take something from his right rear pocket, give it to the vehicles' occupants, and receive something in exchange, which he would then place in his wallet. Torres believed defendant was selling drugs.

Torres radioed Officer Michael Richmond, who was on uniformed patrol nearby, said he had observed some drug transactions, described defendant, and told Richmond to detain him. Richmond drove down Welch Avenue, saw defendant, stopped, and got out of the patrol car. He then asked defendant to come over to him. They approached each other, meeting in the street. Richmond asked defendant for identification, and defendant said he had none. Richmond then "asked him if he was selling dope." Defendant denied selling dope, but did admit possessing dope for his personal use. Richmond then asked, "where is your dope?" Defendant pointed to his right rear pocket. Richmond then removed marijuana from defendant's pocket and arrested him. At some point, Richmond pat-searched defendant, but he could not recall when he did so.

*Discussion*

■ Defendant contends the trial court erred in denying his motion to suppress the marijuana taken from his pocket. ■■ He claims its seizure was the product of admissions obtained in violation of his *Miranda*[1] rights. In particular, he argues that at the time he made the admission, he was subject to "custodial interrogation" and, therefore, Officer Richmond had a duty to advise him of his right to remain silent, to consult a lawyer, to have a lawyer present, and to not incriminate himself. We find no merit in this claim.

[1]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. A motion to suppress physical evidence may properly be based on a claim that its seizure was improper under the Fourth Amendment because the seizure was the tainted product of an admission or confession that police obtained in violation of *Miranda*. (*People* v. *Mattson* (1990) 50 Cal.3d 826, 851 [268 Cal.Rptr. 802, 789 P.2d 983]; *People* v. *Superior Court* (*Zolnay*) (1975) 15 Cal.3d 729, 733-734 [125 Cal.Rptr. 798, 542 P.2d 1390]; cf., e.g., *Green* v. *Superior Court* (1985) 40 Cal.3d 126, 133 [219 Cal.Rptr. 186, 707 P.2d 248].)

■ "*Miranda* requires that a criminal suspect be admonished of specified Fifth Amendment rights. But in order to invoke its protection, a suspect must be subjected to *custodial interrogation*, i.e., he must be taken into custody or otherwise deprived of his freedom in any significant way. [Citation.] The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (*People* v. *Morris* (1991) 53 Cal.3d 152, 197 [279 Cal.Rptr. 720, 807 P.2d 949], internal quotation marks and brackets omitted; *California* v. *Beheler* (1983) 463 U.S. 1121, 1125 [77 L.Ed.2d 1275, 1279, 103 S.Ct. 3517]; *Oregon* v. *Mathiason* (1977) 429 U.S. 492, 495 [50 L.Ed.2d 714, 719, 97 S.Ct. 711]; *Miranda* v. *Arizona, supra,* 384 U.S. at p. 444 [16 L.Ed.2d at p. 706].)

We find particularly instructive the United States Supreme Court's analysis in *Berkemer* v. *McCarty* (1984) 468 U.S. 420 [82 L.Ed.2d 317, 104 S.Ct. 3138]. There, police effected a traffic stop because defendant's car was weaving. The officer asked defendant to exit his car, noticed he was unsteady on his feet, and had him perform a field sobriety test, which defendant failed. The officer directly asked the defendant whether he had been using intoxicants. The defendant replied that " 'he had consumed two beers and had smoked several joints of marijuana a short time before.' " (*Id.* at p. 423 [82 L.Ed.2d at p. 423].)

On these facts, the United States Supreme Court held that *Miranda* warnings were not required before the officer questioned the defendant about his use of intoxicants.

■ The court acknowledged that a traffic stop is a "seizure" under the Fourth Amendment because it "significantly curtails the 'freedom of action' of the driver and the passengers, if any, of the detained vehicle." (468 U.S. at p. 436 [82 L.Ed.2d at p. 332].) Nevertheless, the court opined that a traffic stop did not exert upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.

The court explained that a traffic stop is presumptively temporary and brief and roadside questioning is "quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." (468 U.S. at p. 438 [82 L.Ed.2d at pp. 333-334].) The court also noted that the circumstances of a traffic stop "are not such that the motorist feels completely at the mercy of the police." (*Id.* at p. 438 [82 L.Ed.2d at pp. 333-334].) The court further explained that although the "aura of authority surrounding an armed, uniformed officer" exerts "some pressure

on the detainee to respond to questions[,]" this pressure is offset by the fact that (1) the encounter is in public, reducing the ability of police to use improperly coercive means to elicit incriminating statements; and (2) the detainee most typically will be confronted by only one or two officers, further reducing any sense of vulnerability. (*Id.* at pp. 438 [82 L.Ed.2d at p. 333-334].)

Thus, since the "atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself," the court held that "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." (468 U.S. at pp. 438-439, 440 [82 L.Ed.2d at pp. 333-335].)

 In this case, we focus on the circumstances present when Officer Richmond asked defendant if he was selling drugs. Using no more force than that projected by his uniform, Richmond, who was alone, asked defendant to stop on a public street in broad daylight. Defendant was not formally arrested or led to believe the stop would not be brief. Nor was he told he was the focus of an investigation, confronted with incriminating evidence, or informed of Officer Torres's observations and belief. The length of the stop prior to defendant's arrest was very short.

The circumstances here are less indicative of custody than those attending the traffic stop in *Berkemer*, where an officer followed the defendant, forced his car to stop, and then required him to perform a field sobriety test. In our view, a reasonable person under the circumstances here—a brief *Terry*[2] stop—would not have understood himself to be "in custody." Indeed, the court in *Berkemer* likened a traffic stop to a *Terry* stop, explaining, "The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*." (*Berkemer* v. *McCarty, supra,* 468 U.S. at p. 440 [82 L.Ed.2d at pp. 334-335].)

Defendant argues that the indicia of a formal arrest were present in that the investigation had focused on him. Although our Supreme Court has indicated that this fact is a relevant consideration in determining whether a defendant is in custody (see *People* v. *Morris, supra,* 53 Cal.3d at p. 197; *People* v. *Boyer* (1989) 48 Cal.3d 247, 272 [256 Cal.Rptr. 96, 768 P.2d 610]), we recently explained in *People* v. *Bellomo* (1992) 10 Cal.App.4th 195 [10 Cal.Rptr.2d 782] that being "the focus of official investigation is

---

[2]*Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].

irrelevant to custody unless it is somehow communicated to the defendant."[3] *Id.* at p. 200; *People* v. *Lopez* (1985) 163 Cal.App.3d 602, 606 [209 Cal.Rptr. 575]; see also *Berkemer* v. *McCarty, supra,* 468 U.S. at p. 442 [82 L.Ed.2d at p. 336].)

 Here, as noted above, there is no evidence defendant was aware of the officers' suspicions or even that Torres had been watching him. Moreover, although accusatory-type interrogation may communicate to a detainee that he or she is the focus of an investigation (*People* v. *Bellomo, supra,* 10 Cal.App.4th at p. 200), we do not consider the single question asked by Officer Richmond sufficient by itself to do so in this case. (Cf. *Berkemer* v. *McCarty, supra,* 468 U.S. 420, 423 [82 L.Ed.2d 317 at p. 324] [one question: Have you been using intoxicants?]; *People* v. *Merchant* (1968) 260 Cal.App.2d 875, 877 [67 Cal.Rptr. 459] [Are you an ex-convict? Do you have a gun in your possession?]; *People* v. *Aikens* (1977) 72 Cal.App.3d Supp. 11, Supp. 14 [140 Cal.Rptr. 135] [" 'Does anybody else have any weed?' "].)

Defendant relies on *People* v. *Sims* (1980) 109 Cal.App.3d 900 [167 Cal.Rptr. 506], *People* v. *Herdan* (1974) 42 Cal.App.3d 300 [116 Cal.Rptr. 641], *People* v. *Layton* (1972) 29 Cal.App.3d 349 [105 Cal.Rptr. 509], and *People* v. *Abbott* (1970) 3 Cal.App.3d 966 [84 Cal.Rptr. 40] to support his claim that *Miranda* warnings were required. These cases are factually similar to this one. We note, however, that in each, the court concluded that warnings were required because, among other things, the defendant had been the focus of official investigation. As noted above, this fact is irrelevant unless communicated to the defendant. It does not appear that such communication occurred in any of these cases. If it did, then, of course, this case is distinguishable on that ground. If it did not, then we would decline to follow these cases because their analysis of custody now appears to be incorrect.

In sum, therefore, we conclude that *Miranda* warnings were not required in this case. It follows that the trial court did not err in failing to suppress the

---

[3]In *Berkemer,* the court held that an officer's uncommunicated intent to arrest "has no bearing on the question whether a suspect was 'in custody' at a particular time." (*Berkemer* v. *McCarty, supra,* 468 U.S. at p. 442 [82 L.Ed.2d at p. 336].) "It was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the [c]ourt to impose the *Miranda* requirements with regard to custodial questioning . . . ." (*Id.* at p. 442, fn. 35 [82 L.Ed.2d at p. 336], internal quotation marks omitted.)

evidence obtained as a result of defendant's answer to Officer Richmond's question.[4]

### Disposition

The judgment is affirmed.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.

---

[4]In his motion to suppress evidence, defendant claimed that Officer Richmond lacked a reasonable justification to detain him and that the interrogation was unlawful in the absence of *Miranda* warnings. The trial court denied the motion, expressly ruling that the detention was proper. The denial of defendant's motion also implies a rejection of his *Miranda* claim. In light of our conclusion, we need not address defendant's second contention that his attorney was incompetent in not properly raising or obtaining an express adjudication of his *Miranda* claim.