Filed 3/24/14  P. v. Edwards CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ROBERT LAWRENCE EDWARDS,<br><br>  Defendant and Appellant. | F065442<br><br>(Super. Ct. No. BF140958A)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman, II, Judge.

Christian Koster, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Levy, Acting P.J., Gomes, J. and Franson, J.

A jury convicted appellant, Robert Lawrence Edwards, of driving under the influence of alcohol or drugs with priors (count 1/Veh. Code, §§ 23152, subd. (a) & 23550.5) and driving with a blood alcohol content of .08 percent or more with priors (count 2/Veh. Code, §§ 23152, subd. (b) & 23550.5). In a separate proceeding, appellant admitted a prior prison term enhancement (Pen. Code, § 667.5, subd. (b)) and the court found true a prior conviction for violating Vehicle Code section 23153, subdivision (a) that elevated his other Vehicle Code convictions to felonies.

On July 12, 2012, the court sentenced Edwards to state prison for an aggregate term of four years: the aggravated term of three years on his conviction in count 1, a consecutive one-year prior prison term enhancement, and a stayed three-year term on his conviction in count 2.

On appeal, Edwards contends the court abused its discretion when it denied his motion to suppress certain statements he made to the arresting officer. Additionally, pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) and *People v. Mooc* (2001) 26 Cal.4th 1216 (*Mooc*) he seeks independent review by this court of information in one officer's personnel file. We have conducted the requested review and affirm.

## **FACTS**

On June 15, 2011, at the intersection of Ming and Buena Vista in Bakersfield, Edwards was driving a car with his brother, Steven, as a passenger, when he rear-ended a car driven by Karina Soto. After the collision, Steven drove off in Edwards's car. Bakersfield Police Officer Jared Diederich was dispatched to the scene and first spoke with Soto, who identified Edwards as the driver of the car that hit her. After speaking with Edwards, Officer Diederich arrested him for driving under the influence of alcohol.

On March 27, 2012, the district attorney filed an information charging Edwards with the two counts he was convicted of.

On May 15, 2012, the district attorney filed an amended information alleging a prior prison term enhancement.

On May 29, 2012, Edwards filed several motions in limine, including a motion to suppress certain statements he made to Officer Diederich prior to being arrested, which he alleged were obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

On May 30, 2012, at a hearing on Edwards's suppression motion, Officer Diederich testified that three people were present when he arrived on the scene of the collision at Ming and Buena Vista:  Edwards, Soto, and Soto's passenger.  After speaking with Soto, Officer Diederich asked Edwards if he had been involved in the accident and he responded, "All I'm saying is my brother won't rat on me."  The officer asked Edwards if he had been drinking and he responded, "None of your business."  The officer asked Edwards how much he had been drinking and Edwards repeated that it was none of the officer's business.  The officer asked Edwards if he would perform some field sobriety tests and Edwards responded, "Hell no."

Edwards was exhibiting signs of being intoxicated when Officer Diederich began speaking with him.  Officer Diederich asked the questions noted above in less than three minutes during his initial contact with Edwards.  Edwards was not under arrest or in handcuffs at the time.  Other officers arrived on the scene, but Diederich was not sure whether they arrived while he spoke with Edwards.

After hearing argument, the court denied Edwards's suppression motion.

## DISCUSSION

*The Miranda Issue*

Edwards contends Officer Diederich's questioning was accusatory and would have led a reasonable person to believe he was not free to leave.  Therefore, according to Edwards, Officer Diederich was required to read him the *Miranda* advisements before

3

questioning him and, since he did not, the court prejudicially erred when it ruled that the above-quoted statements were admissible. We disagree.

> "A suspect must be given his *Miranda* warnings -- that he has a right to remain silent, that he is entitled to an attorney, appointed if necessary, and that anything he says may be used against him -- whenever he is interrogated by law enforcement officials *while in custody*." (*People v. Herdan* (1974) 42 Cal.App.3d 300, 306, (*Herdan*) italics added.)

> "'*Miranda* advisement is required prior to police interrogation "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." [Citation.]' [Citations.] The existence of custody is determined by an objective test. [Citations.] 'Where no formal arrest takes place, the relevant inquiry, as with Fourth Amendment claims, "is how a reasonable man in the suspect's position would have understood his situation. [Fn. omitted.] ..." [Citation.]' [Citations.]

> "In [*People v.*] *Lopez*[ (1985) 163 Cal.App.3d 602,] [the] court explained: 'Case law has identified a number of objective indicia of custody for *Miranda* purposes, such as (1) whether the suspect has been formally arrested, … (2) absent formal arrest, the length of the detention, … (3) the location, (4) the ratio of officers to suspects, (5) the demeanor of the officer, including the nature of the questioning.[4]' [Citation.] Footnote 4 elaborated: 'Accusatory questioning is more likely to communicate to a reasonable person in the position of the suspect, that he is not free to leave. [Citation.] General investigatory questioning may convey a different message. [Citation.]' [Citation.]" (*People v. Bellomo* (1992) 10 Cal.App.4th 195, 198-199 (*Bellomo*).)

The instant case is similar to *Bellomo*. In that case, an officer arriving at the scene of an accident was told by a paramedic that he had seen the defendant exit the driver's door of one of the vehicles involved in the accident. The officer then approached the defendant as he sat on a curb and asked him whether he was the driver and for his identification; the defendant replied that he was only walking by. The court held that these questions did not trigger the officer's duty to give the defendant *Miranda* warnings because it would not have led the defendant to believe he was in custody. In so holding, the court stated,

> "There is no evidence that the officer accused defendant of being the driver. Instead, he simply inquired in order to reconstruct what had

4

happened. Such investigatory questions are completely unlike *People v. Herdan*[, *supra*] 42 Cal.App.3d 300 …, relied on by defendant, where the officer asked the suspect if he was in possession of narcotics. (*Id*. at pp. 304, 308.) They are also unlike *People v. White* (1968) 69 Cal.2d 751 …, also relied on by defendant, where the officer told the defendant that a coat involved in a crime seemed to fit him and had his name in it. (*Id*. at p. 761.)" (*Bellomo, supra,* 10 Cal.App.4th at p. 199.)

Edwards was not under arrest or handcuffed when Officer Diederich questioned him and the questioning occurred on a public roadway. Although the evidence is unclear whether other officers were at the scene while Officer Diederich questioned Edwards, it is clear that Diederich was the only officer questioning Edwards. Further, the questioning by Officer Diederich was investigatory, not accusatory, it did not communicate any suspicion to Edwards, and it lasted less than three minutes. In our view, a reasonable person under these circumstances would not have understood himself to be "in custody."

Edwards contends this case is like *Herdan* because asking him whether he had been drinking was accusatory in that it was intended to elicit a response that would incriminate him of drunk driving. We disagree.

Although accusatory-type interrogation may communicate to a detainee that he or she is the focus of an investigation (*Bellomo, supra,* 10 Cal.App.4th at p. 200), the single question complained of here was insufficient by itself to do so in this case. (Cf. *Berkemer v. McCarty* (1984) 468 U.S. 420, 423 (*Berkemer*) [one question: Have you been using intoxicants?]; *People v. Merchant* (1968) 260 Cal.App.2d 875, 877 [Are you an ex-convict? Do you have a gun in your possession?]; *People v. Aikens* (1977) 72 Cal.App.3d Supp. 11, 14 ["'Does anybody else have any weed?'"].)

Edwards contends two other officers were present either before or after Officer Diederich arrived on the scene and he cites their presence as evidence of "objective indicia of arrest." However, Officer Diederich, the only witness at the suppression hearing, testified he was unsure whether other officers were on the scene when he questioned Edwards. In any event, the mere presence of other officers at the scene would

not be enough to lead a reasonable person to believe they were in custody, in light of the other circumstances discussed above.

Edwards also cites the following circumstances to contend he could reasonably believe he was not free to leave:  there was no evidence he agreed to be interviewed, it is clear Officer Diederich considered Edwards a suspect, and Officer Diederich dominated the conversation and ultimately arrested Edwards.  Edwards may reasonably have believed he was not free to leave because he was being detained.  However, *Miranda* warnings are not required when a person is only detained (cf. *Berkemer*, *supra*, 468 U.S. at p. 440 ["persons temporarily detained pursuant to [traffic] stops are not 'in custody' for the purposes of *Miranda*"]).  Further, we do not find the other circumstances cited by Edwards coercive enough to have caused a reasonable person to believe he was in custody, especially since Officer Diederich did not communicate his suspicions to Edwards and his arrest occurred after the questioning.  Therefore, we conclude *Miranda* warnings were not required prior to Officer Diederich asking the questions complained of.  It follows that the trial court did not err when it denied Edwards's suppression motion.

### *The Pitchess Motion*

On April 19, 2012, Edwards filed a *Pitchess* motion requesting discovery of certain records for Bakersfield Police Officers Christina Abshire and Christopher Yslas.

On May 15, 2013, the court granted Edwards's request for an in camera hearing with respect to the records for Officer Yslas, the author of one of the police reports relating to Edwards's arrest.  After conducting the hearing, the court found no discoverable records.

Edwards asks this court to independently review the transcript of the in camera *Pitchess* proceeding and the documents submitted to the court to determine whether the court complied with the proper procedures for such proceedings as set forth in *Mooc*.

The statutory scheme for *Pitchess* motions is contained in Evidence Code sections 1043 through 1047 and Penal Code sections 832.5, 832.7, and 832.8.  When a defendant seeks discovery from a peace officer's personnel records, he or she must file a written motion that satisfies certain prerequisites and makes a preliminary showing of good cause.  If the trial court determines that good cause has been established, the custodian of records brings to court all documents that are "'potentially relevant' to the defendant's motion." (*Mooc*, *supra*, 26 Cal.4th at p. 1226.)  The trial court examines these documents in camera and, subject to certain limitations, discloses to the defendant "'such information [that] is relevant to the subject matter involved in the pending litigation.'" (*Ibid.*)  The ruling on a *Pitchess* motion is reviewed for an abuse of discretion.  (*People v. Hughes* (2002) 27 Cal.4th 287, 330 (*Hughes*).)

The record in this case is adequate to permit meaningful appellate review.  It contains a full transcript of the June 22, 2013, in camera *Pitchess* proceeding and a copy of the police records the trial court examined.  (*People v. Prince* (2007) 40 Cal.4th 1179, 1285 (*Prince*); *Hughes*, *supra*, 27 Cal.4th at p. 330.)  Having independently reviewed the transcript of the *Pitchess* proceeding and the records the court examined and submitted under seal, we conclude the court followed the procedure set forth in *Mooc* and no documents were withheld erroneously.  Accordingly, we uphold the ruling on the *Pitchess* motion.  (*Prince*, *supra*, 40 Cal.4th at p. 1286; *Hughes*, *supra*, 27 Cal.4th at p. 330.)

## DISPOSITION

The judgment is affirmed.